378 A.2d 304

**John SHEHADI, t/a Shehadi Brothers**

v.

**NORTHEASTERN NATIONAL BANK OF
PENNSYLVANIA, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 13, 1977.

Decided Oct. 7, 1977.

C. H. Welles, IV, Welles & McGrath, Scranton, for appellant.

Albert B. Mackarey, Scranton, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

The appellee, John Shehadi, trading as Shehadi Brothers, sued the appellant, Northeastern National Bank of Pennsylvania, hereinafter the Bank, in assumpsit. In substance, Shehadi alleged that the Bank wrongfully appropriated the sum of Nine Hundred Seventy-five dollars and sixty-three cents ($975.63) from an account the parties had established as a "loss reserve" account pursuant to an arrangement whereby the Bank would buy installment contracts from Shehadi.

More particularly, the Bank and Shehadi, an appliance dealer, entered into an agreement whereby the Bank agreed

to purchase Shehadi's installment contracts. The terms on which the contracts were purchased were set forth in an agreement, executed by both parties, entitled "Non-Recourse Plan."

The Non-Recourse Plan, which was in the form of a "letter agreement" provided that Shehadi would sell installment sales contracts to the Bank for an agreed-upon price and further provided that the Bank was to establish a "loss reserve" on its books by crediting thereto "all charges in excess of 6.5% discount" made on [installment] contracts purchased from Shehadi. The Plan further provided that the reserve fund was to be charged with "the unpaid balances, less any unearned finance charge, of delinquent installment sales contracts" purchased from Shehadi.

A portion of any balance remaining in the loss reserve fund was to be refunded to Shehadi at the end of each year and the entire balance was payable to Shehadi upon termination of the Plan.

While party to the Plan, Shehadi made an installment sale to one John Grochal, and entered into an installment contract with Grochal on a form provided by the Bank. The form contained two clauses for assigning the installment contract to the Bank. One clause was headed "with recourse" and read as follows:

### "1) WITH RECOURSE

Undersigned unconditionally guarantees payment of the amount due on said Contract as and when the same shall become due waiving notice of the acceptance hereof and of defaults on said Contract and also waiving any right to require prior enforcement of any rights against any person or any property."

The other clause was headed "without recourse" and read as follows:

### "2) WITHOUT RECOURSE

I agree to repurchase the within contract and/or said goods *in accordance with a certain letter agreement be-*

*tween me and Assignee,* relating inter alia, to the sale by me to Assignee of installment sale contracts and other chattel paper." (Emphasis added.)

The Bank and Shehadi both signed the "WITHOUT RE-COURSE" portion of the form. Grochal defaulted and the Bank deducted the unpaid balance of $975.63 from the loss reserve fund it maintained for Shehadi. Shehadi brought suit to recover that amount.

The trial court concluded that Shehadi's assignment "WITHOUT RECOURSE" precluded the Bank from charging the "loss reserve" fund with the loss resulting from Grochal's default. The trial court reasoned that there existed an ambiguity between the plain meaning of the words "WITHOUT RECOURSE" in the installment contract and the terms of the "NON-RECOURSE PLAN" whereby the Bank could deduct certain losses from the "loss reserve" fund. The trial court then construed the contracts most strictly against the Bank which had prepared them. Shehadi was awarded $975.63 with interest. Exceptions filed by the Bank were dismissed and the Bank appealed the matter to the Superior Court which affirmed the trial court. We granted the Bank's petition for allowance of appeal.

■ We conclude that the trial court erred in finding that an ambiguity existed. The words "WITHOUT RE-COURSE," as they appeared in the assignment clause of the installment contract, are not to be read in a vacuum ignoring the explicitly stated intention of the parties, particularly where, as here, both parties are businessmen contracting at arms-length who knew that this particular transaction took place in the larger context of the financing assignment established by the "non-recourse plan."

As pointed out above, the endorsement in the installment contract "WITHOUT RECOURSE" referred to "a certain letter agreement," i. e., the "NON-RECOURSE PLAN."

"It is a general rule of law that where one contract refers to and incorporates the provisions of another both shall be construed together. The Pennsylvania cases indicate that even where there is no specific reference to a prior agreement or prior agreements, several contracts shall be interpreted as a whole and together." *Wilson v. Viking Corporation,* 134 Pa.Super. 153, 3 A.2d 180 [1938]. *Landreth v. First Nat. Bank,* 346 Pa. 551, 31 A.2d 161 [1943]. *See also* Restatement, Contracts, Section 228, discussing the principles of integration of contracts; *Chicago Pneumatic Tool Co. v. Ziegler,* 151 F.2d 784, 795 (3d Cir. 1945).

The letter agreement, entitled "NON-RECOURSE PLAN," provides that the delinquent balances due on installment contracts are to be charged to the "loss reserve" account.

■ The words "without recourse" do not have a fixed meaning as a matter of law in a transaction between the original parties to any contract. *Berke v. Bregman,* 406 Pa. 142, 176 A.2d 644 (1962). As indicated above, the terms "without recourse" and "non-recourse" were specifically explained in the installment sales contract and the letter agreement.

■ The contractual terms which bound the Bank and Shehadi were found in the "NON-RECOURSE PLAN" *and* the assignment clauses of the installment contract. It is fundamental that one part of a contract cannot be so interpreted as to annul another part and that writings which comprise an agreement must be interpreted as a whole. *Fogel Refrigerator Co. v. Oteri,* 391 Pa. 188, 137 A.2d 225 (1958). The trial court erred in isolating the words "without recourse" in the assignment portion of the installment contract and defining them in the literal sense, while disregarding the intended definition as set forth in the "NON-RECOURSE PLAN" which was clearly and conspicuously incorporated into the assignment section of the installment contract.

It was proper for the Bank to charge the loss reserve account with losses suffered as a result of the delinquent installment contract.

Order reversed.

JONES, former C. J., did not participate in the decision of this case.