454 A.2d 555

**AMERICAN LEASING**

v.

**MORRISON COMPANY, Appellant.**

Superior Court of Pennsylvania.

Submitted April 29, 1981.

Filed Dec. 23, 1982.

320

John W. English, Jr., Erie, for appellant.

Ted J. Padden, Erie, for appellee.

Before CERCONE, President Judge, and BROSKY and HOFFMAN, JJ.

CERCONE, President Judge:

This case involves the lease-purchase of a building located in the city of Erie, Pennsylvania. Following a non-jury trial, the court below found for American Leasing, (hereinafter American) plaintiff below, in the sum of $15,500 with interest. Exceptions were filed and dismissed. A praecipe for judgment was filed by American. Pursuant to direction by this Court, judgment was entered by lower court order *nunc pro tunc* on March 19, 1982. We affirm.

American leased a building from the Erie County Industrial Development Authority (hereinafter E.C.I.D.A.) which held legal title to the real estate, and, in turn, E.C.I.D.A. entered into a mortgage with the Marine Bank in Erie at a low interest rate. The Bank received tax-free interest payments from E.C.I.D.A. and American made payments to E.C.I.D.A. equal to the latter's payments to the Bank. At the end of the lease, which would coincide with the maturity date on the note and mortgage, E.C.I.D.A. was to deed the building to American for nominal consideration. It was the aborted transfer of this agreement between American and E.C.I.D.A. to appellant Morrison Company (hereinafter Morrison) from American which gave rise to the instant action.

Morrison began to show interest in the real estate in early 1975 and on May 16, 1975, Gerald A. Ryan, President of American, met with John H. Morrison, President of Morrison. Also present was Thomas Doolin of Marine Bank. They toured the building and Morrison asked questions of both Ryan and Doolin regarding the lease arrange-

ment. They then had a meeting over lunch at which time they arrived at an agreement to transfer the building from American to Morrison. That same day, Ryan, President of American, incorporated the agreement in a letter to Morrison. Five days later, Morrison replied to the letter and confirmed the agreement as stated in American's letter.

E.C.I.D.A.'s approval of the transfer was obtained within a few weeks of the luncheon. Doolin had given approval of assumption by Morrison of American's loan from Marine Bank. Attorney Toohey of American then attempted to schedule a closing date with Morrison, but Morrison began to delay. After many exchanges between both parties' lawyers, American finally sent Morrison a notice that it was ready to close the transaction by tendering the deed on October 15, 1975. Morrison's lawyer sent American a letter dated October 9, 1975, in which he asserted for the first time that Morrison did not consider that a valid contract had been formed. (However, no reason was offered for this position.)

Subsequently, when it was evident that Morrison was unwilling to perform, American assigned its lease to the Marine Bank for $183,000, which was $8,500 less than the amount which appellant Morrison had agreed to pay. This fact was stipulated to at trial; also stipulated to was the fact that American incurred the expense of four additional months' rent at $1,750 per month, because of Morrison's refusal.

Morrison now appeals the judgment of the lower court which was pursuant to a verdict for American. The court specifically found that the letters of the parties encompassed their agreement as to the lease purchase of the property, that the agreement satisfied the Statute of Frauds, and that no condition precedent was contemplated by the parties to Morrison's duty as purchaser under the agreement.

In two of its arguments, appellant Morrison, urges failure of the contract because the two letters presented by appellee American as evidence of this contract do not comply

with the Statute of Frauds. Morrison asserts that E.C.I. D.A. was the real titleholder to the property. Morrison further contends that because a representative of the E.C.I. D.A. did not sign one of the letters, that the Statute of Frauds was violated. So also was it violated, appellant Morrison contends, because neither letter contains the specificity required by a contract.

We agree with Morrison that because this case involves the transfer of an interest in land, it presents a transaction which is protected by the Statute of Frauds.[1] That is, the terms purporting to convey an interest in land must be manifest in writing, in order to make the contract enforceable. The property must be adequately described, the consideration must be set forth, and the agreement must be signed by the party to be charged. *Keil v. Good*, 467 Pa. 317, 356 A.2d 768 (1976). The writing required by the Statute of Frauds need not be a contract of sale. All that is required is a memorandum containing the aforementioned elements. *Mason-Heflin Coal Co. v. Currie*, 270 Pa. 221, 113 A. 202 (1921).

However, we emphasize that the statute of frauds relating to interests in land is not the type of statute of frauds which renders oral agreements void under every circumstance. *Cf. Blumer v. Dorfman*, 447 Pa. 131, 289 A.2d 463 (1972) (promise to answer another's debt rendered void if not contained in writing.) See also *Leonard v. Martling*, 378 Pa. 339, 106 A.2d 585 (1954). Rather, the Statute of Frauds relating to interests in land constitutes a declaration of public policy, and consequently, can be waived by failing to raise the issue in new matter in a

1. The statute reads in pertinent part:
... [A]ny uncertain interest of, in, or out of any ... lands, ... made or created by ... parol, and not put in writing, and signed by the parties, so making or creating the same, or their agents, thereunto lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect, ...."
Act of March 21, 1772, 1 Sm.L. 389, § 1, 33 P.S. § 1.

responsive pleading. *Brown v. Hahn*, 419 Pa. 42, 213 A.2d 342 (1965); *Bethlehem Steel Corp. v. Tri-State Industries*, 290 Pa.Superior Ct. 461, 434 A.2d 1236 (1981). Therefore, for a defendant to invoke the Statute of Frauds in defending himself at trial, the defendant must first raise it in a responsive pleading under the heading "New Matter." [2]

This waiver rule has been strictly adhered to by our courts.[3] In *Charles v. Henry*, 460 Pa. 673, 334 A.2d 289 (1975), our Supreme Court affirmed the denial of the Statute of Frauds defense to the appellant by the lower court because appellant failed to set forth the defense, in a responsive pleading under the heading "New Matter". The reason for the rule requiring notice of the intention to stand on the Statute of Frauds defense is evident.

> The plaintiff is entitled to be informed, before proceeding to the expense and burden of the prosecution of a fruitless trial, whether defendant intends, upon plaintiff's proof of an oral contract, to claim the protection of the Statute of Frauds. *Charles v. Henry*, 460 Pa. at 678, 334 A.2d at 291.

 Unlike the situation in *Brown v. Hahn, supra*, wherein our Supreme Court found that, despite the procedural error of raising the Statute of Frauds by preliminary objections rather than by New Matter, it would reach the merits of the defense anyway, in this case, we decline to consider Morrison's Statute of Frauds defense. The record reveals that Morrison never pleaded the Statute of Frauds in its Answer, nor does any reference to it appear until the end of American's case.[4] Moreover, Morrison never filed

**2.** Pa.R.C.P. 1030 requires this. Additionally, Pa.R.C.P. 1032 provides that, subject to certain exceptions not herein applicable, "A party waives all defenses and objections which he does not present either by preliminary objection, answer or reply."

**3.** See *Zvonik v. Zvonik*, 291 Pa.Superior Ct. 309, 435 A.2d 1236 (1981); *Axler v. First Newport Realty Investors*, 279 Pa.Superior Ct. 14, 420 A.2d 720 (1980); *Shoup v. Shoup*, 469 Pa. 165, 364 A.2d 1319 (1976).

**4.** In *Brown v. Hahn, supra*, our Supreme Court held that the Statute of Frauds requiring a writing for land contracts creates a waivable defense which must be raised in new matter. At any rate, even if the

the locally required Pre-Trial Narrative which is meant to apprise one's adversary at bar about the particulars of one's case, such as, witnesses, exhibits, etc. For the above reasons, we find appellant's contentions which are based on the Statute of Frauds to be waived.[5]

■ Appellant Morrison attacks the lower court's computation of damages which amounted to an award of $15,500.00 plus interest and costs to appellee American.[6] However, because this issue was not raised by Morrison in its exceptions, we find this issue to be waived. Pa.R.C.P. 1038(d). The lower court has not even been afforded an opportunity to justify its award, since the challenge is raised for the first time only on appeal. Thus, we will not consider it. See *Canada Dry Bottling Co. v. Mertz,* 264 Pa.Superior Ct. 480, 400 A.2d 186 (1979); *Birdman v. Medley,* 261 Pa.Superior Ct. 23, 395 A.2d 285 (1978).

Finally, we address appellant's contention that the contract was not breached because of the existence of two conditions precedent: that appellant Morrison be able to assume the approximately $92,000 on the first mortgage with E.C.I.D.A. and that Morrison be able to assume a note

statute created a bar that was non-waivable, it would be necessary to raise it first in preliminary objections. See also *Goldman et al. v. McShain,* 432 Pa. 61, 247 A.2d 455 (1968).

**5.** Appellant does not challenge the existence of a contract apart from the Statute of Frauds issue. We speculate that his omission stems from a misunderstanding of the significance and purpose of the Statute of Frauds as it relates to oral contracts for the transfer of interests in land. Even if we were to find that a valid oral agreement had been entered into, the result would be a denial *only* of the remedy of specific performance of the contract. *Cf. Weir v. Rahon,* 279 Pa.Superior Ct. 508, 421 A.2d 315 (1980) (disappointed vendee recovered losses incurred on faith of an *oral* contract to purchase land). (See also Rappeport, "Contracts," 20 U. of Pitt.L.R. 293, 296–300 (1958)). At any rate, plaintiff-American did not even seek specific performance of the within agreement, but rather, its damages incurred because of its reliance on the agreement.

**6.** $8,500.00 of this amount represents the difference between the sale price negotiated by American and Morrison and the actual amount received by American in its sale to Marine Bank. $7,000.00 is four months rent at $1,750.00 paid by American upon Morrison's default.

debt of American in the amount of $75,000 at a rate of 6½% before a contract would be formed. A review of the record causes us to conclude that Morrison's contention is not supported by the facts.

 In construing an agreement, it is fundamental that the intention of the parties is controlling, and that intention must be ascertained from the entire instrument. *Waldman v. Shoemaker,* 367 Pa. 587, 80 A.2d 776 (1951) in *Sharp v. McKelvey,* 196 Pa.Superior Ct. 138, 172 A.2d 580 (1961). No particular form of words is necessary to make a term of an agreement a condition of a duty; and, in general, the usual rules of contract interpretation should be employed in light of the general purpose of the agreement. Restatement, Second, Contracts § 226, Comment a (1981).

 American entered an exchange of letters at trial as proof of its contract with Morrison.[7] The pertinent sections of the two letters, the first written and signed by G.A. Ryan, President of American Leasing Company on May 16, 1975, and the second written and signed by John H. Morrison, President of Morrison Company on May 21, 1975 are:

[dated May 16, 1975]

"I would like to confirm that we reached an agreement on the sale of our building at 2118 East 30th Street for approximately $191,500.00 consisting of about $13,000.00 in cash plus assumption of approximately $92,000.00 of debt thru ECIDA plus $75,000.00 of debt to Marine National Bank plus transfer of your land on East 12th Street with an appraised value of $11,500.00."

and [dated May 21, 1975]

"You are correct. The second paragraph of your May 16th letter does confirm the agreement we reached on the sale of your building at 2118 East 30th Street. As I see

---

7. Any number of documents can be taken together to make out the necessary written terms of the bargain provided there is sufficient connection made out between the papers, without the aid of parol evidence, further than to identify papers to which reference is made, but not to supply a material term of the contract. Volume 4, Williston on Contracts, Third Edition, page 128. *Haines v. Minnock Construction Co.,* 289 Pa.Superior Ct. 209, 215–16, 433 A.2d 30, 33 (1981).

it, all we need do now is get the financing required at the agreed upon rates and we are on our way to completing the transaction."

In Support of its contention of the existence of a condition precedent regarding Morrison's being able to obtain a 6½ per cent interest rate on its loans, appellant Morrison cites the last sentence of its letter: "As I see it, all we need do now is get the financing required at the agreed upon rates and we are on our way to completing the transaction."

The issue for our determination, then, is whether that sentence was intended by the parties to be a condition precedent to Morrison's duty to accept tender of the deed to the property.

■■■ The general rule remains that where an act or event mentioned in a contract is not expressly made a "condition precedent," it will not be so construed, unless such clearly appears to be the intention of the parties. *Mellon Bank, N.A. v. Aetna Business Credit Corp.*, 619 F.2d 1001 (3rd Cir.1980); *Sharp v. McKelvey, supra; Britex Waste Co. v. Nathan Schwab and Sons*, 139 Pa.Superior Ct. 474, 12 A.2d 473 (1940). However, stating the general rule does not resolve the problem in this case in which American contends there was no such condition and Morrison argues the opposite.[8] The lower court found no condition precedent was expressed by the sentence from Morrison's letter because it contained no specific rate of interest.

While the absence of a definite amount of interest in a sentence purporting to be a condition precedent weighs against the fact, we additionally look at the statement as it lay in the context of the business relationship between appellant and appellee.

As there was no assertion by either party that the two letters integrated their entire agreement, all of the expressions of the parties' intention must be considered to determine the terms of the agreement. To determine whether

8. See, Childres and Sales, "Restatement 2d and the law of Conditions in Contracts," 44 Miss.L.J. 591 (1973).

either party knew or had reason to know the meaning given to the expression by the other, the court considers such evidence as the admissions of the parties, conduct from which knowledge could be inferred, proof of information or statements to the parties, usages with which the parties were probably familiar and all other surrounding circumstances. 1 Corbin § 104 (1963), cited in Murray on Contracts, § 112 (1974).

As the evidence at trial established in the light most favorable to the verdict winner,[9] a representative of Marine Bank was present during the luncheon on May 16, 1975, during which the agreement between the parties was negotiated. He assured Mr. Morrison that the Marine Bank would allow him to assume American's $75,000 loan. Ryan, of American, testified that no specific interest rate was discussed at the luncheon. In addition, a lease arrangement with E.C.I.D.A. was formulated three weeks after the luncheon. However, Morrison preferred to attempt to obtain financing at a lower rate, that is, at the $6\frac{1}{2}\%$ enjoyed by American, rather than at the $8\frac{1}{4}\%$ offered by Marine Bank and E.C.I.D.A.

Appellee American presented evidence both documentary and oral, that at no time did appellant Morrison represent difficulties with an undesirable interest rate as the reason Morrison was delaying the closing date on the property. On cross examination, John Morrison, President of appellant Morrison Company, admitted that this reason appears nowhere in the correspondence between the representatives of both parties. Other reasons for Morrison's inertia were offered, but not the interest rate problem.[10] In addition,

**9.** "It is hornbook law that the findings of a chancellor or a court sitting without a jury, if affirmed by a court en banc, have the force of a jury verdict and will not be overturned, absent an error of law, if there is evidence to support them." *Fenestra, Inc. v. John McShain, Inc.,* 433 Pa. 137, 139, 248 A.2d 835, 836 (1969).

**10.** Morrison was unable to cancel its lease on another property and this fact was advanced by Morrison for its reluctance to proceed with the agreement. However, this stumbling block was removed when

counsel for Morrison during the summer of 1975 testified that he never mentioned that in Morrison's understanding, an interest rate of 6½% was necessary before the transaction was completed.

James Toohey, lawyer for American, testified from notes that he took during a phone conversation with the lawyer for Morrison, Jonathan Rocker, on September 9, 1975. Rocker told Toohey that Morrison was having three problems with the agreement: "one, the present lease (see footnote 10); two, the deal was never consummated; three, do not want the building, very poor investment." No mention was made of the interest rate in this conversation.

A consideration of these actions by Morrison after the luncheon during which, as American asserts, an enforceable contract with no condition precedent was agreed on, persuades us that American's version of the events more nearly describes what did occur.[11] As our Supreme Court has held, the actions of the parties pursuant to an agreement between them are significant and substantial evidence in determining whether they intended to be bound by the agreement. *Fenestra, Inc. v. John-McShain, Inc., supra; Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 390 A.2d 736 (1978). Morrison's conduct after the agreement does not support its contention at trial and on appeal that its procurement of loans at 6½% was a condition precedent to its duty under the contract.

Therefore, for all of the above reasons, the judgment is affirmed.

American offered to assume the troublesome lease in August of 1975. Morrison's attempts to get out of its current lease continued through July of 1975, a fact which indicates its understanding that it was bound under the agreement of May 16, 1975.

11. We do not find the use of the word "approximately" to modify the amount stated as the agreed upon price in the letter of American to be fatal to the fact of a contract. In fact, at the time of trial, Morrison stipulated to the purchase price for purposes of the damages in an amount equal to that stated in the American letter.