475 A.2d 117

**VILLAGE BEER AND BEVERAGE, INC.**

v.

**VERNON D. COX AND CO., INC. and Edwin Boyer and Frank Fleming and Neshaminy Valley Beer and Soda Centers, Inc.**

**Appeal of NESHAMINY VALLEY BEER AND SODA CENTERS, INC.**

**VILLAGE BEER AND BEVERAGE, INC.**

v.

**VERNON D. COX AND CO., INC.; Edwin Boyer; Frank Fleming; and Neshaminy Valley Beer and Soda Centers, Inc.**

**Appeal of VERNON D. COX & CO., INC., Edwin Boyer and Franklin Fleming.**

Superior Court of Pennsylvania.

Argued Nov. 23, 1983.

Filed March 23, 1984.

Reargument Denied June 5, 1984.

100

Charlotte Thurschwell, Plymouth, for appellants.

Hyman Lovitz, Philadelphia, for appellee.

Before MONTEMURO, WATKINS and HOFFMAN, JJ.

MONTEMURO, Judge:

This matter is before this court on the consolidated appeals of Vernon D. Cox and Co., Inc.; Edwin Boyer and Frank Fleming; and Neshaminy Valley Beer & Soda Center, Inc.; defendants below. Plaintiff/appellee, Village Beer and Beverage, Inc., brought this action in equity alleging that it had an exclusive lease with defendant/appellants, Boyer and Fleming, and requesting that all defendant/appellants be enjoined from entering into a separate lease which would violate the exclusivity agreement of appellee's lease. A non-jury trial was held before the

Honorable William H. Rufe, III, and an adjudication primarily in the nature of equitable relief, and an amended adjudication in the nature of a monetary award, were rendered.[1] The lower court, *en banc,* dismissed the exceptions of appellants,[2] and a final decree was entered on March 24, 1982. Timely appeals were filed from this final decree.

Our scope of review of an adjudication in equity is well established. A chancellor's findings of fact, affirmed by the court *en banc,* have all the force and effect of a jury's verdict and will not be disturbed on appeal if there is sufficient evidence to sustain such findings. *Piercing Pagoda, Inc. v. Hoffner,* 465 Pa. 500, 351 A.2d 207 (1976). This rule is particularly applicable to findings which are predicated upon the credibility of witnesses, whom the chancellor has had the opportunity to hear and observe. *Herwood v. Herwood,* 461 Pa. 322, 336 A.2d 306 (1975). It is equally well settled that a chancellor's conclusions, whether of law or ultimate fact, are always reviewable as they are no more than his reasoning from the underlying facts. *Chambers v. Chambers,* 406 Pa. 50, 176 A.2d 673 (1962).

We do not disturb the findings of fact of the chancellor, there being sufficient evidence to support them. Those findings are extensive and we paraphrase their essence: In the fall of 1975, appellee, Village Beer and Beverage, Inc., (hereinafter "Village Beer") became interested in renting space at the Village Center Shopping Center, which was then under construction in Bensalem Township, Pennsylvania. Village Beer desired to operate a beer distributor business at Village Center Shopping Center, and in order to do so, it first had to purchase a beer distributor license and then get approval of transfer of the license from the Penn-

1. After the original adjudication was entered, appellee petitioned for reconsideration on the basis that injunctive relief was no longer beneficial to it, as its circumstances had changed since the time of the trial.

2. The lower court did make a minor modification of its award based on one of the exceptions.

sylvania Liquor Control Board. The parties were aware that for one to apply for approval of a license transfer, the applicant had to have a location for his business. The Village Center Shopping Center is owned by appellants, Boyer and Fleming. Appellant, Vernon D. Cox & Co., Inc. (hereinafter "Cox & Co.") is the exclusive rental agent for the Village Center Shopping Center.

On December 18, 1975, Village Beer entered into a five year lease for rental of stores Nos. 21 and 22 in the Village Center Shopping Center. The parties stipulated that the lease was their total effective agreement, and the lease was made part of the record below. The parties to the lease ratified a handwritten change in the term of the lease, moving the commencement of the term back to February 1, 1976. The lease provides that monthly installments of rent in the amount of $1,266.66, were to be paid in advance on the first day of each month, said rent to begin on the first day of the term of the lease. The lease further provides:

7. Place of Payment. All rent shall be payable without prior notice or demand at the office of the Lessor ....

8. Affirmative Covenants of Lessee (a) Payment of Rent. Lessee covenants and agrees that he will without demand

(a) Pay the rent ... at the times and at the place that the same are payable, without fail....

. . . . .

14. Remedies of Lessor. If the lessee

(a) Does not pay in full when due any and all installments of rent ...

. . . . .

(d) ... or if for any other reason Lessor shall, in good faith, believe that Lessee's ability to comply with the covenants of this lease, including the prompt payment of rent hereunder, is or may become impaired,

thereupon:

(1) The whole balance of rent and other charges ... shall be taken to be due and payable....

(2) At the option of Lessor this lease and the terms hereby created shall become absolutely void ... whereupon, Lessor shall be entitled to recover damages for such breach in an amount equal to the amount of rent reserved for the balance of the term of this lease....

A rider prepared by appellee and made a part of the lease provides:

(a) LESSOR reserves and LESSEE covenants to pay to the LESSOR without prior demand therefor being made, as rent for the demised premises:

(1) The annual sum of FIFTEEN THOUSAND AND TWO HUNDRED $^{00}/_{100}$ DOLLARS in equal monthly installments of TWELVE HUNDRED AND SIXTY SIX $^{66}/_{100}$ DOLLARS each, in advance on the first day of each and every month during the five (5) years hereof; i.e., Feb. 1st 1976 to Jan. 31st 1981, [terms of Feb. 1st 1976, and Jan. 31st 1981, are handwritten replacing crossed out typed terms of November 1st 1975 and October 31st 1980]

. . . . .

42. The term of this lease shall begin on the 1st day of the month next following the date such building is completed, and shall continue for a period of five (5) years, from such date of commencement, and LESSEE is notified that it may take possession thereof.

. . . . .

45. It is understood that LESSEE is making application for the transfer of a certain beer distributors' license with the Pennsylvania Liquor Control Board; therefore, this Agreement is contingent upon the transfer being approved by the Liquor Control Board of Pennsylvania.

46. It is understood that LESSOR will not enter into any tenancy with anyone for the purpose of establishing another beer distributor business in said shopping center.

On February 19, 1976, the officers of Village Beer met with Frank Cox of Cox & Co. Cox was given a check for $1,266.66, the security deposit to be held under the terms of

the lease. At that time, Village Beer related that it had not yet purchased a beer distributor's license, so it would not be taking possession immediately. Cox acknowledged that he understood the problem.

Village Beer never made any payments to Cox & Co. or to Boyer and Fleming other than the security deposit. By letter dated February 24, 1976, Cox requested from Village Beer a check for rent due on February 1, 1976. By letter dated March 4, 1976, Cox requested from Village Beer a check for rent due on February 1, 1976, and March 1, 1976.

In early April, 1976, Cox & Co. began negotiations with appellant Neshaminy Valley Beer & Soda Center, Inc. (hereinafter "Neshaminy"), concerning a lease in Village Center Shopping Center for a beer distributor store. Counsel for Cox & Co. sent a letter dated May 12, 1976, to Village Beer. That letter stated in pertinent part:

> This is notice under Section 14(d)(2) that the lessor is exercising his option that the lease is hereby terminated by reason of your failure to pay rent for any month during the term of the lease.
>
> Be advised that the lessor has moved immediately to mitigate damages by leasing the property to another party.

On May 13, 1976, Neshaminy entered into a ten year lease for possession of store No. 1 at Village Center Shopping Center, and presently conducts a beer distributor business there. Village Beer rented space at another shopping center, obtained a license and approval of transfer, and operated a beer distributor business there until it sold its license on or about March 4, 1977.[3]

3. The lower court's findings of fact went on to elucidate Village Beer's difficulties in obtaining a beer distributor's license (problems in obtaining financing); Neshaminy's attempts in late April, 1976, to purchase the same license which Village Beer was attempting to acquire; and the actions of Cox & Co. in negotiating a lease with Neshaminy. Since the central issue in the case is one of strict contract interpretation—did Village Beer's failure to pay rent constitute a breach of the lease—these additional facts are irrelevant. The reason for Village Beer's failure to pay rent and the actions of the various parties exemplifying their beliefs that the lease was either

From these facts, the chancellor concluded that Village Beer's failure to pay rent in February, March, April, and May of 1976, did not constitute a breach of the lease, and so that lease was in effect until it was anticipatorily breached by Boyer and Fleming's letter of repudiation of May 12, 1976, and was also breached by Boyer and Fleming's execution of the lease with Neshaminy on May 13, 1976. Thus, the chancellor fashioned equitable relief which put Village Beer in Neshaminy's store at Village Center Shopping Center and enforced the Village Beer lease.

The chancellor focused his analysis on a portion of the lease contained within the rider, at paragraph 45: "this Agreement is contingent upon the transfer [of the beer distributor license] being approved by the Liquor Control Board of Pennsylvania." After pointing out that the word "contingent" created a condition, the chancellor summarily announced that the condition operated as a condition precedent to Village Beer's obligation to pay rent, and as a condition precedent to Boyer and Fleming's obligation to turn over possession. Since approval of transfer of license had not been obtained in February, March, April, and May of 1976,[4] the chancellor concluded that the condition precedent had not been fulfilled and Village Beer had no obligation to pay rent. Curiously, the chancellor held that the condition had no effect on the validity of the lease and its remaining provisions, including Boyer and Fleming's obligation to forebear from renting to another beer distributor business.

A thorough examination of the lease compels us to reject this analysis. Without resort to the language of the condition, other provisions of the lease, or the intent of the contracting parties, the chancellor arrived at a definitive interpretation of the condition which dictated his result.

valid or void after the failure to pay rent, are unrelated to a determination of the actual validity of the lease.

4. Village Beer did not acquire a license until May 10, 1976, and so it could not have even *applied* for Liquor Control Board approval until after that date.

Our review of the lease and application of the principles of contract construction lead us to a contrary interpretation. We must reject the chancellor's conclusions of both ultimate fact and law.

■■■ A lease is in the nature of a contract and is controlled by principles of contract law. *Pugh v. Holmes,* 486 Pa. 272, 405 A.2d 897 (1979). In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished. *Unit Vending Corp. v. Lacas,* 410 Pa. 614, 190 A.2d 298 (1963). Where the words of the contract are clear and unambiguous, the intent of the parties must be determined from the agreement itself. *Kennedy v. Erkman,* 389 Pa. 651, 133 A.2d 550 (1957). One part of a contract cannot be so interpreted as to annul another part, but, rather, writings which comprise an agreement must be interpreted as a whole. *Shehadi v. Northeastern National Bank of Pennsylvania,* 474 Pa. 232, 378 A.2d 304 (1977). Ambiguous language in a contract is to be interpreted most strongly against the party who selected the language. *West Penn Realty Co. v. Acme Markets, Inc.,* 224 Pa.Super. 202, 303 A.2d 836 (1973). Finally, where an act or event mentioned in a contract is not expressly made a condition precedent, it will not be so construed unless such clearly appears to be the intention of the parties. *American Leasing v. Morrison Co.,* 308 Pa.Super. 318, 454 A.2d 555 (1982).

■■■ Applying these principles, we first look to the express language of the lease. There is no question that the lease expressly provides for the payment of rent, in advance, due on the first day of each month during the term of the lease. This is stipulated several times in the main body of the lease, as well as in paragraph (a)(1) of the rider. It is also clear that the five-year term of the lease commenced on February 1, 1976—a date which reflected a modification from the original contract term of November 1,

1975. This modification was effected in both the main body of the lease and the rider by crossing out the typed term and writing in February 1, 1976, by hand. The parties ratified this modification. Furthermore, the lease expressly addresses the remedies of the lessor in the event of the lessee's failure to pay rent. Specifically, paragraph 14 provides for the acceleration of rental payments for the balance of the term, and gives the lessor the option to treat the lease as void and recover damages in the amount of rent reserved for the balance of the term.

Looking only at these undisputed, unambiguous provisions, the lease is a simple instrument which requires payment of monthly rental starting February 1, 1976, and which distinctly gives the lessor the right to consider the lease void upon the lessee's failure to pay rent when due. Thus, in the absence of paragraph 45 in the rider, Village Beer's failure to pay rent in February, March, April, and May of 1976, absolutely acts as a breach giving Boyer and Fleming the option to treat the lease as void.

The question then becomes whether the inclusion of paragraph 45 alters the effect of the lessee's failure to pay rent such that failure to pay rent does *not* constitute a breach of the lease. We look to the language of that paragraph:

> 45. It is understood that LESSEE is making application for the transfer of a certain beer distributors' license with the Pennsylvania Liquor Control Board; therefore, this Agreement is contingent upon the transfer being approved by the Liquor Control Board of Pennsylvania.

We observe immediately that, on its face, this paragraph is not concerned with the precise contractual details of payment of rent and the features of breach. Its thrust, rather, is on the event of approval or disapproval of the license transfer and the impact of the happening of that event on the agreement. We agree with the chancellor that the described impact is a conditional one; the word "contingent" unmistakably creates a condition. We disagree with the chancellor, however, as to exactly *what* is made conditional by paragraph 45, and *how* that condition operates.

Paragraph 45 provides that what is made conditional is "this Agreement." There is no ambiguity in these explicit words—"this Agreement" identifies the lease between the parties of December 18, 1975. It is the lease itself which is subject to the event of approval or disapproval, not any selected performances thereunder. We are bewildered by the chancellor's construction that what is made conditional is two contractual duties—to pay rent and relinquish possession—but that the remaining provisions of the lease, including the contractual duty to forbear from renting to another beer distributor business, are unaffected by the condition. There is no foundation for an interpretation of "this Agreement" other than its plain and ordinary meaning. Paragraph 45 makes the total agreement of December 18, 1975, subject to the occurrence of the event.

While the express language of paragraph 45 depicts exactly what is made conditional, that language completely fails to delineate how the condition operates. "[T]his Agreement is contingent upon the transfer being approved" sets forth the event which is not certain to occur—approval—but is not informative as to whether the occurrence of approval initiates the agreement, or whether the failure of the transfer to be approved terminates the agreement; i.e. whether the condition is a condition precedent or a condition subsequent. We must look to the intention of the parties as embodied in the whole agreement and the objects it attempts to accomplish.

We start from the recognition that a condition precedent and a condition subsequent are fundamentally different: a condition precedent must occur before performance under a contract arises, while a condition subsequent acts to discharge a contractual duty after it has already occurred. RESTATEMENT (SECOND) OF CONTRACTS §§ 224, 230 (1981).[5] While conditions usually deal with duties of performance, they may relate to the existence of contracts as

---

**5.** The Restatement has discarded the terminology of "condition precedent" and "condition subsequent", but the principles remain the same. *See also Cambria Savings & Loan Association v. Estate of Gross,* 294 Pa.Super. 351, 439 A.2d 1236 (1982).

well. 5 WILLISTON ON CONTRACTS § 666 (3rd ed. 1961). Thus, if the parties intended to create a condition precedent, "this Agreement" would not arise until approval had occurred; if the parties intended to create a condition subsequent, "this Agreement" would have full force and effect unless and until the Liquor Control Board decided not to approve the transfer of license, at which time the lease agreement would terminate. We find that the latter interpretation is the only one which is consistent with the goals of the contracting parties and other provisions of the lease.

Assuming that the parties created a condition precedent, the interests of neither party would be served. The lease agreement would have no force and effect until approval. This would be detrimental to Village Beer's interests because Boyer and Fleming would not be obligated to forbear from renting to another beer distributorship until approval. For the provision of forbearance to provide Village Beer with the protection of exclusivity, it would have to have been in continuous effect from the time of execution of the lease agreement. This could not be accomplished if the condition is interpreted as a condition precedent. Likewise, it would not be in Boyer and Fleming's interests to create a condition precedent. To do so would require them to "reserve" stores Nos. 21 and 22 for an indefinite period of time without the payment of any consideration. They could not rent stores Nos. 21 and 22 to another business, for if approval of Village Beer's license were granted, they would be liable to Village Beer under the lease. If approval were not granted, Boyer and Fleming would have tied up stores Nos. 21 and 22 and restrained from renting space in the shopping center to any other beer distributor business, without any remuneration or advantage whatsoever.

In addition, to consider the condition as a condition precedent would be to totally disregard other provisions of the lease. The lease is specific in several places, including the rider prepared by Village Beer, that the first rental payment was to be made on February 1, 1976. Why would the parties specify *and change* a date certain if what they

really meant was that the rental obligation arose if and when approval was granted. Such an interpretation is contradictory and we cannot interpret the condition so as to annul other provisions of the agreement. *Shehadi, supra.* There being no clear intent by the parties to establish a condition precedent, we cannot construe paragraph 45 as such. *American Leasing, supra.*

On the the other hand, an interpretation of the condition as a condition subsequent accomplishes the objectives of the parties to the lease. With the lease in existence until termination by disapproval, Village Beer would be liable for only those rental payments due from February 1, 1976, until disapproval. Its obligation to pay rent at the rate of $1,266.66 per month for five years would be discharged and the acceleration clause would have no effect. More significantly, Village Beer would be protected from another beer distributor business entering Village Center Shopping Center during the period from execution of the lease until the date of approval/disapproval. As for Boyer and Fleming, they would be compensated for their forbearance and reservation of stores Nos. 21 and 22 by rental payments.

Under all the circumstances, therefore, an interpretation of the condition as a condition subsequent ascribes the most reasonable, probable, and natural conduct to the parties. *Unit Vending Corp., supra.* We find that it was the intention of the parties to create a condition subsequent in paragraph 45. The lease was in full force from the date of execution, and Village Beer had an obligation to pay rent in February, March, April, and May of 1976. Village Beer's failure to pay rent constituted a breach under the terms of the lease, Boyer and Fleming exercised their option to terminate the lease, and they were thereafter free to contract with Neshaminy.

Accordingly, we reject the conclusions of ultimate fact and law derived by the chancellor, and we remand for modification of the decree in conformity with this opinion. This court does not retain jurisdiction.