548 A.2d 623

**EMLENTON AREA MUNICIPAL AUTHORITY**

**v.**

**Sidney L. MILES, Doing Business, as Miles Developing and Contracting, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 16, 1988.

Filed Oct. 5, 1988.

304

David B. Acker, District Attorney, Coudersport, for appellant.

Jon M. King, Emlenton, for appellee.

Before BROSKY, KELLY and HESTER, JJ.

BROSKY, Judge:

This is an appeal from the Order of December 30, 1987, which permanently stayed arbitration of the disputes between the parties. Appellant now contends that the trial court erred in finding that the contract between the parties required mutual agreement before any disputes arising from the contract could be submitted to arbitration.

Upon consideration of the record and the briefs of counsel, we now reverse and remand for further proceedings consistent with this Opinion.

On March 13, 1985, appellee Emlenton Area Municipal Authority ("Emlenton") entered into a contract with appellant Sidney L. Miles, d/b/a Miles Developing and Contracting ("Miles"), wherein Miles was to construct a municipal waste water collection and treatment works in Venango and Clarion Counties, Pennsylvania. During the performance of the contract, certain disputes pertaining to the contract arose between the parties, causing them to assert claims for damages against one another.

On June 2, 1986, Miles, in an attempt to resolve his claims against Emlenton, filed a demand for arbitration with the American Arbitration Association. Emlenton responded on August 6, 1986, by filing an application for stay of arbitration proceedings with the Clarion County Court of Common Pleas.

With that matter still pending, Emlenton then filed, on May 4, 1987, an action at law in the same court, asserting its claims for damages against Miles and his surety,[1] Fidelity and Deposit Company of Maryland. In response to the action at law, Miles filed, on June 5, 1987, an application to compel arbitration. The court entered an order that same day to stay the proceedings at law, pending resolution of the issue of the arbitrability of the dispute.

On October 1, 1987, an order was entered with respect to Miles' claims against Emlenton, granting Emlenton's application for a stay of arbitration; similarly, on October 7, 1987, an order was entered in Emlenton's action at law against Miles, denying Miles' application to compel arbitration. In both instances, the court held that those portions of the contract comprising the parties' agreement to arbitrate, only provide for the submission of any dispute or disputes to arbitration upon the mutual consent of the parties to so submit, and that, in light of Emlenton's opposi-

---

1. The surety is not a party to the current appeal.

tion to arbitration of these disputes, Emlenton could not be compelled to submit to arbitration in either action.

Miles requested reconsideration in both cases, and reconsideration was expressly granted by the order of October 28, 1987. On December 30, 1987, however, the court entered a final order in equity in both actions, permanently staying arbitration. This timely consolidated appeal followed.

Appellant now argues that the trial court erred in finding that the agreement to arbitrate contained within the parties' contract requires mutual consent for the submission of any particular dispute or disputes to arbitration, and maintains that the court's narrow reading of the agreement precluding arbitration violates the liberal policy favoring arbitration, as well as the relevant rules of contractual interpretation and construction, expressed in Pennsylvania appellate law.[2] Conversely, appellee maintains that Pennsylvania law requires strict construction of arbitration agreements, and that a party may be compelled to arbitrate a dispute only

---

**2.** Appellant also argues, for a substantial portion of his brief, that the Federal Arbitration Act ("FAA") is applicable to the subject contract, as one involving a "transaction in commerce", and that the parties' agreement to arbitrate should therefore be construed in keeping with the liberal federal policy favoring resolution of disputes through arbitration.

We are precluded, however, from passing upon the merits of appellant's FAA argument. The determination as to whether a contract is one evidencing a transaction in or relating to interstate commerce, is a factual determination. *Gavlik Construction Co. v. H.F. Campbell Co.*, 526 F.2d 777, 784 (3rd Cir.1975). Where the factfinder makes no findings as to whether the contract evidences a transaction in commerce, and does not state whether it is applying federal or state law to the arbitration issue, the absence of any findings precludes appellate consideration as to whether the FAA applies. *Id.*, citing *Merritt–Chapman & Scott Corp. v. Pennsylvania Turnpike Commission*, 387 F.2d 768, 772 (3rd Cir.1967).

In the instant matter, appellant submitted a proposed finding of fact to the trial court, "(T)hat the contract involved in the instant controversy is a transaction which 'involves commerce' and is, therefore, subject to the provision of the Federal Arbitration Act." The court did not adopt this finding, and was silent as to whether federal or state law was applied. Normally, we might remand for a specific finding of fact on this point, see *Gavlik*, supra. However, as we would reach the same result under either federal or state law, we do not find a need to remand. *Id.*

upon the finding of a clear, express, and unequivocal agreement to do so.

Our scope of review of an adjudication in equity is well established. The chancellor's findings of fact have the force of a jury verdict, and are not to be disturbed where supported by competent evidence. *Presbytery of Beaver-Butler of United Presbyterian Church in U.S. v. Middlesex Presbyterian Church*, 507 Pa. 255, 267, 489 A.2d 1317, 1323 (1985), cert den. 474 U.S. 887, 106 S.Ct. 198, 88 L.Ed.2d 167; *Sechler v. Sechler*, 403 Pa. 1, 7, 169 A.2d 78, 80 (1961). However, the chancellor's conclusions of law are always reviewable, as they are no more than his reasoning from the underlying facts. *Presbytery of Beaver-Butler*, supra; *Sechler*, supra; *Village Beer and Beverage, Inc. v. Vernon D. Cox & Co., Inc.*, 327 Pa.Super. 99, 102, 475 A.2d 117, 118 (1984).

In the matter *sub judice*, the chancellor was called upon to determine whether the parties had agreed to submit any and all disputes to arbitration. Voluntary arbitration is purely a matter of contract, and, absent an express agreement between the parties to arbitrate their disputes, they cannot be compelled to arbitrate. *Gaslin, Inc. v. L.G.C. Exports, Inc.*, 334 Pa.Super. 132, 139, 482 A.2d 1117, 1121 (1984). As such, it is for the court to determine whether an agreement to arbitrate exists, for the construction and interpretation of contracts is a question of law. *Utica Mutual Ins. Co. v. Contrisciane*, 504 Pa. 328, 334, 473 A.2d 1005, 1008 (1984). As a question of law, therefore, the chancellor's conclusion as to whether the parties have agreed to arbitrate, is reviewable by this Court.

Upon undertaking such review, we are confronted with two basic, and seemingly contradictory, propositions, as noted by the parties themselves: (1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement, unless it may be said with positive assurance that the arbitration clause involved is not

susceptible to an interpretation that covers the asserted dispute. See *Hassler v. Columbia Gas Transmission Corp.*, 318 Pa.Super. 302, 307, 308, 464 A.2d 1354, 1356, 1357 (1983); also see *Lincoln University of the Comm. System of Higher Education v. Lincoln University Chapter of the American Assoc. of University Professors*, 467 Pa. 112, 119–20, 354 A.2d 576, 581–82 (1976). Obviously, some tension may arise between the two propositions; in making every effort to favor the settlement of a dispute by arbitration, one must be careful not to extend the arbitration agreement by implication beyond the clear, express, and unequivocal intent of the parties as manifested by the writing itself. *Hassler,* supra.

To resolve this tension, resort may be had to the rules of contractual construction. In construing a contract, the intention of the parties is paramount, and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished. *Village Beer,* supra, 327 Pa.Superior Ct. at p. 107, 475 A.2d at p. 121; *Unit Vending Corp. v. Lacas,* 410 Pa. 614, 617, 190 A.2d 298, 300 (1963). Moreover, one part of a contract cannot be so interpreted as to annul another part, but, rather, the agreement must be interpreted as a whole, giving effect to all of its provisions. *Village Beer,* supra; *Shehadi v. Northeastern Nat'l Bank of Pa.,* 474 Pa. 232, 236, 378 A.2d 304, 306 (1977). Where a contract may be interpreted in a manner giving effect to all provisions, that interpretation is preferred. *Rothstein v. Jefferson Ice Mfg. Co.,* 137 Pa.Super. 298, 306, 9 A.2d 149 (1939). Finally, where an act or event mentioned in a contract is not expressly made a condition precedent, it will not be so construed absent the clear intent of the parties. *Village Beer,* supra; *American Leasing v. Morrison Co.,* 308 Pa.Super. 318, 327, 454 A.2d 555, 559 (1982).

■ The relevant provisions of the parties' contract, as determined by the court in equity, are as follows:

## Standard General Conditions

*Article 16—Arbitration*

16.1 *All claims, disputes and other matters* in question between Owner and Contractor arising out of, or relating to the Contract Documents or the breach thereof ... *shall be decided by arbitration* ...

*Article 17—Miscellaneous*

17.4 The duties and obligations imposed by the General Conditions and the rights and remedies available to the parties hereto, ..., and all of the rights and remedies available to Owner and Engineer thereunder, *shall be in addition to and shall not be construed in any way as a limitation of, any rights and remedies available to any or all of them which are otherwise imposed or available by law or contract,* ...

## Supplemental General Conditions

1. General

(a) The owner and Contractor agree that the following supplemental general provisions shall apply to the work to be performed under this contract *and that such provisions shall supercede [sic] any conflicting provisions of this contract.*

    \*    \*    \*    \*    \*    \*

(c) The rights and remedies of the Owner provided for in these clauses *are in addition to any other rights and remedies provided by law or under this Contract.*

7. Remedies

*Except as may be otherwise provided in this Contract,* all claims, counter-claims, disputes and other matters in question between Owner and Contractor arising out of or relating to this agreement or the breach thereof *will be decided by arbitration if the parties hereto mutually agree,* or in a court of competent jurisdiction within the State in which the Owner is located.

(Emphasis supplied.)

In construing the above, the court relied heavily upon the language in Supplemental General Condition 1(a), stating that the Supplemental General Conditions are to supersede "any conflicting provisions" elsewhere in the contract. From 1(a), the court concluded that Supplemental General Condition 7, providing for arbitration only upon the mutual agreement of the parties to submit a dispute or disputes to arbitration, supersedes the mandatory arbitration provision in Article 16.1 of the Standard General Conditions, and precludes appellee from being compelled to arbitrate without its express consent.

Appellee further attempts to buttress the court's interpretation with the language of Supplemental General Condition 1(c), and Article 17.4 of the Standard General Conditions, maintaining that these clauses clearly demonstrate that Article 16.1 is not to be construed as a limitation upon any "right or remedy" under the contract, and that the mutual consent provision of Paragraph 7, as a condition precedent to arbitration, is a right and remedy which cannot be annulled by Article 16.1.

Appellant maintains, however, that such a construction blatantly ignores Paragraph 7's preface, "(E)xcept as may be otherwise provided in this Contract". Appellant argues that the Supplemental General Conditions are a required part of this type of contract under federal law, not a bargained-for part of the agreement, and that the purpose of this preface is to permit the parties to provide elsewhere in the contract for dispute resolution by mandatory arbitration, should they choose to so provide; moreover, appellant continues, when the preface is taken into account, there is no conflict between Article 16.1 and Paragraph 7, and the supersession language of Paragraph 1(a) is not invoked.

Without addressing whether the Supplemental General Conditions are boilerplate requirements under federal law, we nonetheless conclude that appellant's construction of these interrelating contractual provisions "ascribes the most reasonable, probable, and natural" intention of the parties.

Initially, the language of Article 16.1, providing for mandatory arbitration of all contractually-related disputes, has been used countless times in previous cases, and has already been held to be "the broadest conceivable language" from which it must be concluded that the parties intended "an unlimited arbitration clause." See *Borough of Ambridge Water Authority v. Columbia*, 458 Pa. 546, 548, 328 A.2d 498, 501 (1974); see also *Wolf v. Baltimore*, 250 Pa.Super. 230, 235, 378 A.2d 911, 913 (1977) and *Flightways Corp. v. Keystone Helicopter Corp.*, 459 Pa. 660, 663, 331 A.2d 184, 185 (1975). As it is always to be assumed that parties contract with knowledge of the existing law, see *Harding v. Pa. Mut. Life Ins. Co.*, 171 Pa.Super. 236, 252, 90 A.2d 589, 597 (1952), aff'd 373 Pa. 270, 95 A.2d 221, cert. den. 346 U.S. 812, 74 S.Ct. 21, 98 L.Ed. 340 (1953), we must begin with the assumption that the parties did not include such a clause in ignorance of its implications.

Furthermore, we find merit to appellant's argument that the preface to Paragraph 7, "(E)xcept as may be otherwise provided in this Contract" is rendered a nullity under the trial court's construction of this contract. The phrase is of no effect unless it is construed as a mechanism by which the parties may elect to either: (1) eliminate the possibility of arbitration entirely, or (2) provide a more binding arbitration provision. Clearly and unambiguously, the parties have chosen to follow the latter course through the inclusion of Article 16.1. To construe the interrelationship of Article 16.1 and Paragraph 7 in the manner suggested by the trial court permits the "mutual agreement" language of Paragraph 7, at the least, to become a condition precedent to the operation of a clear mandatory arbitration provision in Article 16.1, and at the worst to annul not only Article 16.1, but Paragraph 7's own preface. Either result flies in the face of accepted rules of construction, see *Village Beer*, supra; *American Leasing*, supra; *Shehadi*, supra. This is to say nothing of the sheer violation of common sense inherent in an interpretation which would permit a party to avoid a mandatory arbitration provision to which he has agreed, by refusing his consent to arbitration. Conversely,

the construction suggested by appellant does not annul Paragraph 7, for the mutual agreement provision is *expressly* conditioned in the paragraph itself with the contingency that the parties might elect to "otherwise provide" elsewhere in the contract for dispute resolution.

Likewise, when the "mutual agreement" language is not read in a vacuum, but in the context of the entire paragraph, neither the supersession language of Paragraph 1(a), nor the prohibitions against limiting rights and remedies found in Article 17.4 and Paragraph 1(c), are even invoked. When the preface of Paragraph 7 is given effect, Paragraph 7 and Article 16.1 simply do not conflict, and Article 16.1 is not a prohibited limitation upon a remedy, for the remedy is, by its very terms, circumscribed and open to modification.

Finally, we are mindful of the policy of this Commonwealth favoring arbitration whenever arbitration is expressly provided for:

> Settlement of disputes by arbitration are no longer deemed contrary to public policy. In fact, our statutes encourage arbitration and with our dockets crowded and in some jurisdictions congested arbitration is favored by the courts.
>
> *      *      *      *      *      *
>
> Arbitration is not a makeshift or a subterfuge. It is not an excuse for delay or a fan for the cooling off of tempers. It is a solemn and serious undertaking for the attainment of justice and when parties engaged in a common enterprise agree to settle by arbitration all differences which may arise between them they are bound by their commitment as much as if they had entered into a stipulation in Court.
>
> *Borough of Ambridge,* supra, 458 Pa. at p. 549, 328 A.2d at p. 500.

In light of the foregoing, we now reverse the order of December 30, 1987, which permanently stayed arbitration, and remand for arbitration proceedings. Jurisdiction is relinquished.