**Muschlitz Excavating, Inc. v. LTS Dev., LLC**

C.P. of Monroe County, no. 7571 CIVIL 2010.

*Victor E. Scomilio,* for plaintiff.
*Domenic P. Sbrocchi,* for defendant.

MILLER, *J.,* November 17, 2010—In May of 2008, Muschlitz Excavating, Inc. ("Muschlitz") entered into an agreement to perform site work for LTS Development, Inc. ("LTS") on a property known as Water Gap Preserve at Hidden Lake, in Middle Smithfield Township, Monroe County, Pennsylvania. The contract signed by LTS, as owner, and Muschlitz, as contractor, incorporated American Institute of Architects Document A201-1997, General Conditions of Contract for Construction ("AIA Document") by reference. The contract also named the

engineer and surveyor associated with the project, but did not identify an architect for the site work.

On August 12, 2010, Muschlitz filed a complaint with the court, alleging that LTS owed over $330,000 in payments under the terms of the contract. LTS raised preliminary objections to the complaint on August 31, 2010, and argued that the arbitration provision of the AIA document dictated that the parties submit the dispute to arbitration. At the same time, Muschlitz filed a request for production of documents from LTS; LTS responded with a motion for protective order which sought to narrow the scope of Muschlitz's request.

We consolidated these arguments and, after review of briefs submitted and oral arguments, we dismiss LTS's preliminary objections to Muschlitz's complaint but grant LTS's motion for protective order without prejudice, and we direct Muschlitz to narrow the scope of its request for production of documents.

LTS filed preliminary objections on the basis that the arbitration provision in the AIA document, incorporated into the May 23, 2008 contract by reference, directs that the parties first try to resolve any disputes through mediation, and if not successful, through binding arbitration. Whether an agreement to arbitrate disputes exists is a question of law for the court to decide. *Shadduck v. Christopher J. Kaclik, Inc.*, 713 A.2d 635 (Pa. Super. 1998); *Emlenton Area Mun. Auth. v. Miles*, 548 A.2d 623 (Pa. Super. 1988). Courts employ well-settled principles of contract interpretation to determine whether an agreement to arbitrate exists. *Neuhard v. Travelers Ins. Co.*, 831 A.2d 602 (Pa. Super.

2003); *Midomo Co., Inc. v. Presbyterian Housing Dev. Co.*, 739 A.2d 180 (Pa. Super. 1999). The fundamental rule when construing a contract is to ascertain and give effect to the intentions of the parties. *Murphy v. Duquesne University of the Holy Ghost*, 565 Pa. 571, 777 A.2d 418 (2001); *Felte v. White*, 451 Pa. 137, 302 A.2d 347 (1973). Under ordinary principles of contract interpretation, the agreement is to be construed against its drafter. *Rusiski v. Pribonic*, 511 Pa. 383, 515 A.2d 507 (1986); *Village Beer and Beverage, Inc. v. Vernon D. Cox and Co., Inc.*, 475 A.2d 117 (Pa. Super. 1984).

LTS directs the court to various provisions within the AIA document and claims that these provisions require both parties submit their dispute to binding arbitration. All of the provisions cited in the AIA document, however, refer to an "architect," and many of these clauses condition the rights and obligations of either party on the architect's judgment as it relates to the underlying project. Under the AIA document the architect "will provide administration of the contract" and act "as a representative of the owner...."See AIA document § 4.2. Section 4.4.1 of the AIA document states:

> Claims...shall be referred initially to the architect for decision. An initial decision by the architect shall be required as a condition precedent to mediation, arbitration or litigation of all claims between the contractor and owner arising prior to the date final payment is due, unless 30 days have passed after the claim has been referred to the architect with no decision having been rendered by the architect.

Section 4.6.1 provides that "[a]ny claim arising out of or related to the contract...shall, after decision by the architect or 30 days after submission of the claim to the architect, be subject to arbitration." Furthermore, section 4.3.6 states, "[i]f the contractor believes additional cost is involved for reasons including...(4) failure of payment by the owner... claim shall be filed in accordance with this section 4.3."

As owner of the property, LTS drafted the contract and incorporated the AIA document by reference. LTS never chose an architect to administer the contract, however, and we are compelled to construe the provisions in the AIA document against the drafter. See *Rusiski*, supra. The mediation and arbitration requirements, set forth in the AIA document, are inapposite and impossible to satisfy because LTS did not choose an architect to administer the contract. Muschlitz could not possibly refer their claim to the architect to satisfy the "condition precedent to mediation, arbitration or litigation of all claims between the contractor and owner," as contemplated by the contract. The provisions in the contract that provide for resolution of disputes, therefore, do not apply to any disputes between LTS and Muschlitz under the May 2008 agreement because LTS did not assign an architect to the project, and the contract only contemplates dispute resolution mechanisms that involve an architect.

We find that the provisions for dispute resolution in the contract do not provide adequate channels for Muschlitz to seek redress, and Muschlitz may pursue their claim in this court.

LTS also filed a motion for protective order from

Muschlitz's discovery requests.

Pennsylvania Rule of Civil Procedure 4012 provides:

Upon motion by a party or by the person from whom discovery or deposition is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense, including...(5) that the scope of discovery should be limited.

Rule 4011 similarly states that "[n]o discovery or deposition shall be permitted which...(b) would cause unreasonable annoyance, embarrassment, oppression, burden or expense to the deponent or any person or party [or] (c) is beyond the scope of discovery as set forth in Rules 4003.1 through 4003.6...." Rule 4003.1 sets out the familiar scope of discovery, generally:

[A] party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, content, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

Furthermore, the decision whether to grant a motion for protective order lies within the sound discretion of the trial court. *Allegheny West Civil Council, Inc. v. City Council of City of Pittsburgh*, 484 A.2d 863 (Pa. Cmwlth. 1984).

During discovery, Muschlitz sent LTS a request for production of documents. Muschlitz requested, among other documents: all bills, invoices, and receipts concerning the subject property or project; all "statements" of plaintiff, defendant, actual and potential witnesses, and other parties; all documents relating to any investigation undertaken by LTS which pertained to the allegations "described in your complaint"; and any and all documents, contracts, proposals, and correspondence between LTS and "any other entity" regarding the subject property or construction thereon.

Muschlitz's request far exceeds the permissible scope of discovery as set forth in Rules 4003.1 and 4011. For one, Muschlitz's request for all bills and receipts concerning the subject property or project requires LTS generate documentation of any transaction even peripherally related to the subject matter of this dispute. As phrased, this request also obliges LTS to disclose all financial documents regarding the subject property at any time, and not just after LTS and Muschlitz began negotiations for site work. Second, Muschlitz's request for all "statements" of plaintiff, defendant, actual and potential witnesses, and other parties is impermissibly vague and overbroad. This request does not define the parameters of relevant statements under rule 4003.4, and ostensibly asks LTS to disclose any and all statements recorded and adopted by anyone, anywhere. Similarly, Muschlitz's final catch-all request for "all documents, contracts, proposals, invoices, [or] correspondences between [LTS] and any other entity, person, or contractor..." attempts to compel disclosure of any relevant evidence in any form that plaintiff's counsel

may have forgotten. Muschlitz also curiously references the allegations in "your complaint" in their request directed to LTS, even though Muschlitz, as plaintiff, filed the complaint in this matter.

Clearly, LTS would be subject to unreasonable annoyance and expense if required to comprehensively respond to the various requests in Muschlitz's request for production of documents. On this basis, we grant defendant's protective order and direct plaintiff to narrow the scope of their requests to those materials within the proper ambit of discovery as set forth in Rules 4003.1 and 4011. While we choose to only highlight some of Muschlitz's numerous requests to demonstrate their deficiencies, we instruct plaintiff to conform all their requests to this order.

Accordingly, we enter the following order.

## ORDER

And now, November 17, 2010, following oral arguments and after review of the briefs submitted, it is ordered as follows:

1. Defendant's preliminary objections are dismissed.

2. Defendant's motion for protective order is granted without prejudice, and plaintiff is directed to narrow the scope of their request for production of documents.