**MIDOMO COMPANY, INC.**

v.

**PRESBYTERIAN HOUSING DEVELOPMENT COMPANY, Presbyterian Homes, Inc., the Presbyterian Homes of New Jersey Foundation, Inc. and Keith LePrevost.**

**Appeal of Presbyterian Housing Development Co., and Presbyterian Homes, Inc., Appellants. (at 1637)**

**Midomo Company, Inc.**

v.

**Presbyterian Housing Development Co., Presbyterian Homes, Inc., the Presbyterian Homes of New Jersey Foundation, Inc. and Keith LePrevost.**

**Appeal of the Presbyterian Homes of New Jersey Foundation, Inc. and Keith LePrevost, Appellants. (at 1638)**

Superior Court of Pennsylvania.

Argued April 13, 1999.

Filed Sept. 15, 1999.

Paula J. McDermott, Harrisburg, for Presbyterian Housing Development Co., and Presbyterian Homes, Inc.

Stephen W. Miller, Philadelphia, for Midomo Co., Inc.

Robert Rhoad, Princeton, NJ, for Presbyterian Homes of New Jersey Foundation, Inc., and Keith LePrevost.

Before McEWEN, President Judge, and FORD ELLIOTT and OLSZEWSKI, JJ.

FORD ELLIOTT, J.:

¶ 1 In this appeal, we are asked to decide whether the trial court erred when it denied the preliminary objections of Presbyterian Housing Development Co. ("PHDC"); Presbyterian Homes, Inc. ("PHI"); and Presbyterian Homes of New Jersey Foundation, Inc. ("PHNJ") and Keith LePrevost, appellants herein, alleging alternative dispute resolution by reason of an arbitration agreement. Before reaching the merits of appellants' issues, however, we must ascertain whether the trial court's order is appealable.

¶ 2 "Denial of preliminary objections is ordinarily an interlocutory order not subject to immediate appeal." *Hazleton Area School Dist. v. Bosak*, 671 A.2d 277, 281 n. 8 (Pa.Commw.1996). Nevertheless:

Pennsylvania Rule of Appellate Procedure 311 provides that an interlocutory appeal may be taken as of right from any order which is made appealable by statute. Pa.R.A[pp].P. 311(a)(8). The Uniform Arbitration Act, 42 Pa.C.S.A. §§ 7301 *et seq.*, states that an appeal may be taken from '[a] court order denying an application to compel arbitration....' 42 Pa.C.S.A. § 7320(a)(1). *Goldstein v. Depository Trust Co.*, 717 A.2d 1063, 1065 (Pa.Super.1998), *appeal denied*, —— Pa. ——, 736 A.2d 605, 1999 Pa. Lexis 472 (1999).

▮▮▮ ¶ 3  We note first that the parties and the trial court proceed as if the arbitration provision in the Lease Agreement is an agreement to arbitrate pursuant to the Uniform Arbitration Act, 42 Pa.C.S.A. §§ 7301–7320 ("UAA"). (*See* PHDC's brief at 12; PHI's brief at 16; PHNJ's brief at 11; Midomo's brief at 12; trial court opinion, 9/25/98 at 4.) "In order for an agreement to arbitrate to fall within the Uniform Arbitration Act, two requirements must be met: first, the agreement must be in writing; and second, the agreement must expressly provide for arbitration under the Act." *Dearry v. Aetna Life & Cas. Ins. Co.*, 415 Pa.Super. 634, 610 A.2d 469, 471 (1992); 42 Pa.C.S.A. § 7302(a). The Lease Agreement at issue in this case provides, however, for arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") or, if both parties agree in writing, the Construction Arbitration Rules of the AAA. (PHDC R.R. at 59a.) An agreement to arbitrate in accordance with the Rules of the AAA is an agreement pursuant to common law arbitration. *Runewicz v. Keystone, Ins. Co.*,

476 Pa. 456, 461, 383 A.2d 189, 191 (1978); *Smith v. Cumberland Group, Ltd.*, 455 Pa.Super. 276, 687 A.2d 1167, 1171 n. 5 (1997); *Goral v. Fox Ridge, Inc.*, 453 Pa.Super. 316, 683 A.2d 931, 932 (1996).

¶ 4  The Lease Agreement also provides, however, that arbitration shall be governed by the substantive laws of Pennsylvania and by the Federal Arbitration Act ("FAA"), Title 9, U.S.Code. (PHI R.R. at 60a.) According to appellants, because the UAA is similar to the FAA, they have "expressly provide[d] for arbitration pursuant to ... any other similar statute," as required by 42 Pa.C.S.A. § 7302(a), thereby invoking the UAA.

¶ 5  We need not decide whether common law or statutory arbitration applies, however, in order to decide whether appellants' issues are properly before us because 42 Pa.C.S.A. § 7342(a), relating to common law arbitration, provides that several sections of the UAA, including § 7303, relating to the validity of an agreement to arbitrate; § 7304, relating to court proceedings to compel or stay arbitration; and § 7320, relating to appeals from court orders (except subsection (a)(4)) are applicable to common law arbitration.

¶ 6  In this case, however, unlike *Goldstein, supra*, appellants did not file a petition to compel arbitration. Instead, they filed preliminary objections pursuant to Pa.R.Civ.P. 1028(a)(6), 42 Pa.C.S.A.[1] In their preliminary objections, PHDC and PHI requested the court to determine that a valid arbitration agreement existed and to order Midomo to seek its remedy in arbitration. (PHDC R.R. at 100a, 121a.) In contrast, PHNJ and LePrevost moved under Rule 1028(a)(6) for an order dismissing the counts in the complaint applicable

---

1. That Rule provides:
   (a) Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:
   . . . .
   (6) pendency of a prior action or agreement for alternative dispute resolution.
   **Note**

An agreement to arbitrate may be asserted by preliminary objection or by petition to compel arbitration pursuant to the Uniform Arbitration Act, 42 Pa.C.S. § 7304, or the common law, 42 Pa.C.S. § 7342(a).
Pa.R.Civ.P. 1028, 42 Pa.C.S.A.

to them based on their assertion that Midomo's exclusive remedy was through arbitration. (PHDC R.R. at 131a.)

¶ 7 In its order, the trial court dismissed the preliminary objections of the various defendants alleging alternative dispute resolution by reason of an arbitration agreement between the parties.[2] (PHDC R.R. at 139a.)

■■■ ¶ 8 While an order denying preliminary objections is generally not appealable, "[t]here exists ... a narrow exception to this oft-stated rule for cases in which the appeal is taken from an order denying a petition to compel arbitration." *Shadduck v. Christopher J. Kaclik, Inc.*, 713 A.2d 635, 636 (Pa.Super.1998) (citations omitted). In this case, however, appellants' preliminary objections are not precisely in the form of a petition to compel arbitration. Nevertheless, we will not exalt form over substance. *Olivetti Corp. of America v. Silia Property, Inc.*, 502 Pa. 538, 539–40, 467 A.2d 321, 322 (1983). We therefore find that the order denying the preliminary objections alleging alternative dispute resolution and requesting that the court order Midomo to arbitrate the dispute is an interlocutory order, appealable as of right pursuant to Pa.R.App.P. 311(a)(8), Pa.R.Civ.P. 1028(a)(6) and Note, and 42 Pa.C.S.A. §§ 7342(a), 7320(a)(1), and 7304(a). *See Hazleton Area School Dist.*, 671 A.2d at 281 n. 8 (trial court's order which had denied Bosak's preliminary objections was interlocutory but appealable as of right pursuant to Pa. R.Civ.P. 1028(a)(6), 42 Pa.C.S. § 7320, and Pa.R.App.P. 311(a)(7)).[3] As a result, we have jurisdiction to address the issues appellants raise in this appeal. The factual and procedural history of the case therefore follows.[4]

¶ 9 In 1994, PHI and PHNJ entered into a joint venture which became known as PHDC. (Transcript of oral argument, 10/26/98 at 3.) PHI is a Pennsylvania non-profit corporation which owns and/or operates personal care facilities for the elderly at several locations, but not in northeastern Pennsylvania. (PHI R.R. at 2a.) PHNJ is a New Jersey non-profit corporation which likewise owns and/or operates personal care facilities for the elderly at several locations, but not in northeastern Pennsylvania. Keith LePrevost ("LePrevost") was vice-president of development for PHNJ. PHDC, a Pennsylvania non-profit corporation, was formed to develop personal care facilities in northeastern Pennsylvania. LePrevost acted as agent and negotiator for PHDC.

¶ 10 In 1994, LePrevost informed Midomo's president, Dominick Ortolani ("Ortolani"), that PHNJ and PHI were forming a joint venture which would be interested in developing property owned by Midomo known as the "Hanover property" in Hanover Township, Luzerne County, Pennsylvania. LePrevost represented PHDC in its negotiations with Midomo. Midomo, a Pennsylvania corporation, is an experienced construction management and real estate development company. (*Id.* at 2a–3a.)

¶ 11 Over the next several years, the parties undertook extensive marketing and

---

**2.** The court also dismissed appellants' preliminary objections in the nature of a demurrer and a motion to strike and their preliminary objections to Midomo's claim for punitive damages; however, those parts of the order are not ripe for review. *Goldstein*, 717 A.2d at 1065, citing *Shadduck v. Christopher J. Kaclik, Inc.*, 713 A.2d 635, 636–37 (Pa.Super.1998).

**3.** Rule 311(a)(7), cited by the *Hazleton* court, became Rule 311(a)(8) in 1996 with the addition of a new Rule 311(a)(5).

**4.** Because this appeal is before us from the denial of preliminary objections, the record consists of only plaintiff's complaint and appellants' respective preliminary objections: no answer or new matter has yet been filed. We are therefore somewhat limited in our ability to discern the undisputed facts of this case.

financial analyses of the area, retained an architect, and obtained township planning commission and PHDC board approval for the project. Based on assurances from LePrevost and from PHI's president Stephen Proctor that the Hanover property appeared to be an optimal site, Midomo incurred legal and other costs associated with developing the property. (*Id.* at 3a–9a.)

¶ 12 By December of 1996, counsel for PHDC and Midomo started work on reducing the parties' agreement to writing. By late May 1997, counsel had nearly completed a Lease Agreement and Development Agreement. The Lease Agreement provided that PHDC was to pay rent to Midomo for 20 years unless PHDC exercised a purchase option. Midomo was also to receive $100,000 per year for 20 years, plus 50 percent of the Hanover Project's net cash flow. (*Id.* at 10a.) At the end of May, however, counsel for PHI, John Killian, informed counsel for PHNJ, who was handling negotiations for PHDC, that he insisted on the addition of a contingency paragraph to the Lease Agreement. (*Id.*) That paragraph provides:

> *Section 44. Contingency Date.* Tenant shall have until July 15, 1997 (the 'Contingency Date') to provide written notice to Landlord of any matters shown by the Title Report, Survey, Environmental Report or Tenant's market studies that are not satisfactory to Tenant. Tenant in its sole discretion, shall have the right to either (a) terminate this Lease effective as of the date of the notice or (b) to specify the reason that such matters are not satisfactory and the curative steps that the Landlord must take to remove the basis for the Tenant's disapproval (the 'Objection Notice'). If the Tenant chooses to provide the Objection Notice, then Landlord shall have until July 22, 1997 (the 'Extended Contingency Date') to agree to take the curative steps or the Lease will be deemed to have been terminated as of the Contingency Date.

PHI R.R. at 67a. The parties executed the Lease Agreement, which included this paragraph, in June 1997. According to Midomo, it executed the Lease Agreement despite the addition of this paragraph based on appellants' continual representations over a period of almost two years that the Hanover property was an excellent location for a personal care facility. (PHI R.R. at 11a.)

¶ 13 Despite these assurances, PHDC informed Midomo by letter dated June 9, 1997, faxed July 9, 1997, that it was terminating the Lease Agreement as of June 9 "on the ground that our market studies are not satisfactory to assure the success and viability of the project," referencing Section 44 of the Lease Agreement. (*Id.* at 90a.) Later that day, PHDC faxed to Midomo a portion of a market analysis conducted by Third Age and dated July 9, 1997. PHDC subsequently sent other studies, prepared and/or conducted after the July 15 deadline required by Section 44. (*Id.* at 11a–12a.) According to Midomo's complaint, however, the cause of the problem was a disagreement between PHNJ and PHI as to development philosophies: PHNJ no longer wanted to participate in development in Pennsylvania; therefore PHI had decided to proceed alone. (*Id.* at 13a.)

¶ 14 Nevertheless, over the next six months, LePrevost proposed several other sites which would be developed by Midomo and operated by PHDC, including a site at West Wyoming and a site at Montage. Hoping to mitigate its losses from the Hanover project's cancellation, Midomo, at appellants' direction, participated in negotiations for these sites with the property owners, realtors, and municipal officials, and incurred additional expenses to revise engineering and architectural plans, and to engage an environmental consultant, surveyor, and other contractors. (*Id.* at 16a.) Proctor later revoked these projects, and appellants, who told Ortolani to submit Midomo's expenses to PHI, never compen-

sated Midomo for these expenses. (*Id.* at 16a–17a.)

¶ 15 On March 18, 1998, Midomo filed a complaint in civil action, naming PHDC, PHI, PHNJ, and LePrevost as defendants. Counts I and II named all defendants and alleged fraudulent misrepresentation and non-disclosure, and negligent misrepresentation and non-disclosure, respectively. (*Id.* at 18a, 21a.) Count III named PHDC and alleged breach of the contract contingency clause. (*Id.* at 23a.) Counts IV, V, and VI named PHI and alleged interference with contract, breach of oral contract, and breach of contract implied in fact, respectively. (*Id.* at 24a, 26a, 27a.)

¶ 16 On April 7, 1998, PHDC and PHI filed preliminary objections to Midomo's complaint. (R. at 6, 7.) On April 30, 1998, PHNJ and LePrevost filed preliminary objections to Counts I and II of Midomo's complaint. (R. at 20.) The trial court denied the preliminary objections by order entered September 25, 1998, and these timely appeals followed.[5] As we have already stated, we have jurisdiction to address only the denial of the preliminary objections claiming the existence of a previous agreement to arbitrate, and wisely this is the only issue appellants raise. *Goldstein*, 717 A.2d at 1065.

¶ 17 All three briefs raise essentially the same issue, although each frames it slightly differently. We set forth PHI's version:

> Whether the lower court erred in its refusal to force appellee, Plaintiff below, Midomo Company, Inc., to seek its remedy for any matters alleged in connection with the termination of the Hanover Woods project against all parties involved, in an arbitration proceeding pursuant to the terms of the lease agreement contract signed between Midomo

and appellant, Presbyterian Housing Development Company?

PHI brief at 3. The error alleged included:

> (a) failing to broadly and liberally construe the applicable arbitration provisions so as to promote the public policy interest in alternative dispute resolution; and
>
> (b) failing to analyze whether the specific factual allegations that form the basis for the claims asserted in the Complaint fit within the express language used in the arbitration provisions in the agreements; and
>
> (c) holding that alleged agents of the signatory to valid arbitration agreements lack standing to enforce those agreements; and
>
> (d) refusing to dismiss the plaintiff's claims against the nursing home operator and its agents and compel arbitration where the plaintiff's claims arise out of and relate to those agreements?

PHNJ and LePrevost brief at 3.

¶ 18 Our review of a claim that the trial court improperly denied appellants' preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition. *Goldstein*, 717 A.2d at 1065 (citation omitted).

¶ 19 "When one party to an agreement seeks to prevent another from proceeding to arbitration, judicial inquiry is limited to determining (1) whether a valid agreement to arbitrate exists between the parties and, if so, (2) whether the dispute involved is within the scope of the arbitration provision." *Smith*, 687 A.2d at 1171 (citations omitted).[6] "An

---

5. PHDC and PHI filed a joint notice of appeal, but have filed separate briefs. PHNJ and LePrevost filed a second, separate notice of appeal and a joint brief.

6. Under the FAA, the trial court would likewise be limited to determining whether a valid agreement to arbitrate existed, and whether the specific dispute fell within the substantive scope of that agreement. *Optop-*

agreement to arbitrate a dispute is an agreement to submit oneself as well as one's dispute to the arbitrators' jurisdiction." *Id.*

¶ 20 Furthermore, "[a]rbitration is a matter of contract and, as such, it is for the court to determine whether an express agreement between the parties to arbitrate exists." *Id.* (citations omitted). "Because the construction and interpretation of contracts is a question of law, the trial court's conclusion as to whether the parties have agreed to arbitrate is reviewable by this Court." *Id.* (citations omitted). Our review is plenary, as it is with any review of questions of law. *Riley v. Warren Mfg., Inc.*, 455 Pa.Super. 384, 688 A.2d 221, 224 (1997).

¶ 21 While in the usual case, we would address the issue whether an agreement to arbitrate exists before we address the scope of the agreement, in this case we choose to address the second issue first because it is dispositive. Or, more precisely, while there is no dispute that an agreement to arbitrate exists between Midomo and PHDC as to certain classes of claims, the issue whether PHI and PHNJ may compel arbitration under the terms of that agreement is disputed.[7] We need not resolve that issue, however, if we find that the scope of the arbitration agreement does not cover the allegations in Midomo's complaint directed at PHI and PHNJ. We therefore address the scope of the agreement first.

¶ 22 In this case, the Lease Agreement provided for resolution of disputes as follows:

*Section 37. Dispute Resolution.* (a) If disputes arise between Landlord and Tenant regarding *(i) the interpretation of this Agreement, (ii) the reasonableness of any action taken or judgment that either party makes in any instance where that party has agreed in this Agreement to be reasonable in taking that action or making that judgment, (iii) the reasonableness of any cost or expense that one party seeks to charge the other in accordance with the terms of this Agreement, (iv) the extent of the abatement or adjustment in Base Rent or Additional Rent that should occur by virtue of any of Sections 14(b), 19(a), 20(b) and 21(d), or (v) whether either party has defaulted in respect of any of the obligations it has undertaken under the terms of this Agreement,* (collectively, a 'Dispute') Landlord and Tenant may not initiate litigation to resolve those disputes, but shall attempt in good faith to resolve those disputes in the manner prescribed below.

(b) *Negotiation between Senior Executives.*

(i) The Parties shall attempt in good faith to resolve any Dispute, promptly by negotiation between executives who have authority to settle the Dispute ('Senior Party Representative').

(ii) Either Party may give the other Party written notice (a 'Dispute Notice') of any Dispute which has not been resolved in the normal course of business....

(iii) If the Dispute has not been resolved within sixty (60) days after delivery of the Dispute Notice, or if the Parties fail to meet within thirty (30) days after delivery of the Dispute No-

ics Laboratories Corp. v. Nicholas, No. 96–8169, 1997 WL 408043, 1997 U.S. Dist. Lexis 10399 (E.D.Pa. July 18, 1997). If there exists a genuine issue of fact concerning the formation of the agreement, however, the party allegedly in default of the arbitration agreement, here Midomo, is entitled to have a jury resolve the issue. *H.L. Libby Corp. v. Skelly and Loy, Inc.*, 910 F.Supp. 195, 198 (M.D.Pa.1995), citing Title 9 U.S.C.A. § 4.

7. Also disputed is whether the arbitration provision applies to claims against PHDC not related to the Hanover Project, or to claims against PHDC related to Section 44 of the Lease Agreement. We address these issues *infra.*

tice as hereinabove provided, either Party may initiate arbitration of the Dispute as hereinafter provided.

. . . .

(c) *Arbitration.*

(i) If the Dispute has not been resolved by negotiation as provided in subsection (a), then, except as provided in this subsection, the Dispute shall be determined by arbitration in the City of Philadelphia, in accordance with the Commercial Arbitration Rules of the American Arbitration Association ('AAA') (or, if both parties agree in writing, Construction Arbitration Rules of the AAA). . . . The arbitration shall be governed by the substantive laws of the Commonwealth of Pennsylvania applicable to contracts made or to be performed therein, and by the Federal Arbitration Act, Title 9, U.S.Code, without regard to conflicts of law rules, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

. . . .

(h) The procedures specified in this **Section 37** are the sole and exclusive procedures for the resolution of *disputes to which this Section 37 is intended to apply* . . . .

. . . .

*Section 38.   Miscellaneous . . . .*

. . . .

(d) This Agreement will be governed by and interpreted with the laws of the state where the Premises are located, and, *in those instances where Section 37 does not apply, the parties submit to the jurisdiction of any appropriate court within that state for adjudication of disputes arising from this agreement.*

PHI R.R. at 58a–61a, 62a (emphasis in original and added).

¶ 23   The Lease Agreement, by its express terms, is applicable only to the Hanover Project.   (Exhibit A to Lease Agreement, PHI R.R. at 86a.)   Thus, the arbitration provision in the Lease Agreement cannot possibly be construed to apply to that portion of Counts I and II of Midomo's complaint involving claims regarding the West Wyoming Project.   Furthermore, the Lease Agreement cannot be extended to apply to Counts V and VI of Midomo's complaint, which involve claims against PHI relating only to the West Wyoming Project.   We turn then to that portion of Counts I and II involving claims relating to the Hanover Project, and Counts III and IV, which also involve claims relating to the Hanover Project.

¶ 24   Counts I and II are tort claims for fraudulent and negligent misrepresentation, respectively, against all defendants. Our supreme court has previously held that where a contract provides for arbitration of all claims or disputes arising out of or relating to the contract, the parties intended to submit all of their grievances to arbitration, regardless of whether the claims sounded in tort or contract.  *Flightways Corp. v. Keystone Helicopter Corp.,* 459 Pa. 660, 661–63, 331 A.2d 184, 185 (1975) (where a contract provides that the parties will arbitrate any claim or controversy arising out of or relating to this agreement or alleged breach thereof, broader language would be difficult to construe and will not be circumvented by an allegation that the contract was void *ab initio* because of fraud in the inducement); *Shadduck,* 713 A.2d at 637.   As the *Shadduck* court observed, "[t]here is no limiting language of the type that would lead one to believe that only contract claims fall within the purview of the agreement." *Shadduck,* 713 A.2d at 637.   *But see Hazleton Area School Dist.,* 671 A.2d at 282–283 (an arbitration clause providing that claims, disputes, or other matters in question between the parties arising out of or relating to the agreement or breach thereof does not include tort claims, distinguishing *Muhlenberg Twshp. School District Authority v. Pennsylvania Fortunato Construction Co.,* 460 Pa. 260, 333 A.2d

184 (1975), in which the contract provided for arbitration of any claim for damages resulting from the wrongful act or neglect of the other party).

¶ 25 In this case, as the highlighted portions of Section 37(a) indicate, the Lease Agreement provides for arbitration in a limited number of situations. Section 38(d) further indicates that the parties clearly intended to **adjudicate disputes arising from the agreement** to which Section 37 did not apply. We thus agree with the trial court that the arbitration clause contained in this agreement is unlike the broad-based clauses which formed the subject matter in cases such as *Flightways*, *supra*, *Shadduck*, *supra*, and *Emlenton Area Mun. Authority v. Miles*, 378 Pa.Super. 303, 548 A.2d 623, 626 (1988), *appeal denied*, 522 Pa. 613, 563 A.2d 498 (1989). The parties clearly intended the arbitration clause in the Lease Agreement to apply only to certain classes of contract disputes relating to the Hanover Project.

■ ¶ 26 Additionally, we note that many of Midomo's claims of fraudulent and/or negligent misrepresentation in connection with the Hanover Project arise from events that occurred before the parties executed the Lease Agreement. We cannot infer an intent to arbitrate disputes regarding events that predated an agreement from an arbitration clause that limits itself to disputes regarding, *inter alia*, interpreting the agreement or defaulting on the obligations arising from the agreement.

¶ 27 This case is therefore distinguishable from *Optopics Laboratories Corp. v. Nicholas*, No. 96–8169, 1997 WL 408043, 1997 U.S. Dist. Lexis 10399 (E.D.Pa. July 18, 1997), cited by PHNJ. In *Optopics*, the parties' merger agreement included 36 subsections containing representations and warranties as to the condition, liabilities, obligations, etc. of defendant/sellers' business. *Id.* at *3. The agreement also provided that defendants agreed to indemnify plaintiffs and hold them harmless for any misrepresentations or breaches of warranty made "in or pursuant to" the agreement, as well as for any debts, claims, or liabilities not properly disclosed. *Id.* at *4–*5. Finally, the agreement established a procedure for resolving indemnity disputes, which included arbitration. *Id.* at *6. Thus, when plaintiffs brought suit seeking indemnification and alleging fraud based on alleged misrepresentations in the agreement, the court properly held that the arbitration provision also applied to the fraud count. *Id.* at *21.

■ ¶ 28 PHNJ has, however, also invoked the arbitration provision in the Development Agreement. The relevant paragraph follows:

ARTICLE XVI

Arbitration

In the event of any claim, cause of action, right to relief or dispute between the Owner and the Developer which relates to or arises out of this Agreement, including without limitation, the meaning or application of any provision of this Agreement or the performance of any obligation under this Agreement, the parties shall be required, to the extent feasible, to resort to the arbitration provisions of the Lease.

PHI R.R. at 80a. We agree with Midomo that this provision never came into effect under the express terms of the Development Agreement, which also provides, "The term of this Agreement shall commence on the date the Contingency Date or the Extended Contingency Date of the Lease have expired and the Lease has not been terminated as provided therein...." (PHI R.R. at 78a.) Because PHDC terminated the lease before the contingency date expired, this Agreement never commenced.[8] The fact that Midomo invoked

---

8. Even if this Agreement were applicable, however, we note that Article XXI of the

Agreement provides that in the event of a conflict between a provision in the Develop-

the Development Agreement in its complaint does not alter our analysis, which is based on the clear language of the Agreement itself. *See Hazleton Area School District*, 671 A.2d at 282 (in order to determine the intent of the parties to a contract, a court should look to the four corners of the document and its express language) (citations omitted).

¶ 29 We therefore find that the arbitration clause at issue in this case does not apply to tort claims, because tort claims are neither specifically nor implicitly delineated in Section 37(a), which limits itself to disputes regarding specific aspects of the Lease Agreement only. As a result, we find that the arbitration provision does not apply to Counts I and II of Midomo's complaint against all defendants, or to Count IV, interference with contracts, against PHI. Thus, having concluded that none of Midomo's claims against PHI and PHNJ/LePrevost are within the scope of the arbitration clause in the Lease Agreement, we need not determine whether those parties, who were not parties to the Agreement itself, can compel Midomo to arbitrate.[9] We turn then to the one remaining claim, breach of contract against PHDC.

¶ 30 Count III claims breach of the contract contingency clause, Section 44, and is brought against PHDC only with regard to the Hanover Project. We must therefore determine if any of the provisions of Section 37(a) cover a breach of Section 44. Midomo claims they do not because Section 44 was added after the parties negotiated the terms of Section 37. (Midomo's brief at 20.) Nevertheless, the plain language of Section 37 indicates that it applies to disputes of several specific

types arising from the Agreement in general; only subsection 37(a)(iv) is limited to specific sections of the Agreement. Therefore, if Midomo's claims regarding a breach of Section 44 fall under one of the other enumerated subsections, the claims should be arbitrated.

¶ 31 Clearly, subsections (ii), (iii), and (iv), by their terms, do not apply, nor does PHDC claim they do. Instead, PHDC claims that subsections (i) and (v) apply to a breach of Section 44. We review these subsections recognizing "that the law favors settlement of disputes by arbitration and seeks to promote swift and orderly disposition of claims." *Hazleton Area School District*, 671 A.2d at 282 (citation omitted). "At the same time, ... a court must be careful not to extend an arbitration agreement by implication beyond the clear, express and unequivocal intent of the parties as manifested by the writing itself." *Id.* (citation omitted). Or, as the *Emlenton Area* court observed, a court must apply two basic and seemingly contradictory propositions when deciding whether the parties have agreed to arbitrate a particular dispute:

> (1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute.

*Emlenton Area Mun. Authority*, 548 A.2d at 625 (citations omitted). To resolve this tension, courts should apply the rules of contractual construction, adopting an in-

---

ment Agreement and a provision in the Lease Agreement, "the terms, covenants and conditions of the Lease shall prevail." (PHI R.R. at 82a.)

9. Had we reached this issue, we would have had to determine whether the FAA applied to this case because the FAA preempts state arbitration law. *Libby*, 910 F.Supp. at 197. As

a result, we would have been bound by the numerous federal cases cited by PHI and PHNJ/LePrevost. *Pritzker v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1114 (3d Cir.1993) (federal law applies when construing an arbitration clause if the motions pertaining to arbitration are brought pursuant to the FAA).

terpretation that gives paramount importance to the intent of the parties and ascribes the most reasonable, probable, and natural conduct to the parties. *Id.* at 626 (citations omitted). All parts of the contract should be interpreted together, with the goal of giving effect to each of its provisions. *Id.* (citations omitted).

¶ 32 Subsection (i) applies to disputes regarding the interpretation of the Lease Agreement. According to Midomo's complaint, PHDC's purported termination of the lease was invalid because it failed to give timely written notice of matters in multiple market studies that were not satisfactory, and its alleged dissatisfaction was not based on the market studies but on other unrelated factors amounting to caprice or bad faith. (PHI R.R. at 23a.)

¶ 33 While the second claim does not implicate interpretation of the Lease Agreement, we agree with PHDC that the first claim may: it requires interpreting Section 44 to determine what the parties meant by "timely written notice of matters in multiple market studies that were not satisfactory" in order to determine whether PHDC's notice complied.

¶ 34 We also find that subsection (v) applies to one or both of the claims. That subsection requires arbitration of disputes regarding whether either party has defaulted in respect to any obligations it had undertaken under the Agreement. (PHI R.R. at 58a.) In order to determine whether PHDC defaulted, a panel of arbitrators [10] must determine what Section 44 required of PHDC, thus implicating the first claim, and also whether PHDC acted in good faith, thus implicating the second claim.

¶ 35 Midomo claims, however, that Section 44 does not create obligations. We disagree. PHDC had an obligation,

defined, *inter alia,* as a duty imposed by contract, to notify Midomo of matters that were not satisfactory before it could terminate the Agreement pursuant to Section 44.[11] (Black's Law Dictionary 968 (5th ed.1979).) Whether PHDC fulfilled that obligation is a question for the arbitrators.

¶ 36 As a result of the foregoing, we affirm the trial court's order denying the preliminary objections of PHI and PHNJ/LePrevost and denying the preliminary objections of PHDC as to Counts I and II of Midomo's complaint, insofar as those preliminary objections allege alternative dispute resolution by reason of an arbitration agreement. We reverse the court's order, however, insofar as it denies the preliminary objection of PHDC regarding Count III of Midomo's complaint, and grant that preliminary objection.

¶ 37 Order is affirmed in part and reversed in part. Count III of Midomo's complaint is stricken. Midomo is ordered to seek redress as to Count III through arbitration, as provided by the Lease Agreement.

¶ 38 Jurisdiction is relinquished.

---

10. Because Midomo's complaint claims damages in excess of $3 million as to this count, the Lease Agreement requires that a panel of three arbitrators be appointed. (Lease Agreement Section 37(c)(iii), PHI R.R. at 60a.)

11. We agree with PHDC that the Lease Agreement became effective when it was executed in June 1997; otherwise PHDC's right to *terminate the lease,* as provided in § 44, would be a nullity.