J-A07018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GAVCO MATERIALS, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRAYMAN CONSTRUCTION CORPORATION | |
| Appellant | No. 697 WDA 2015 |

Appeal from the Order Entered April 9, 2015
In the Court of Common Pleas of Fayette County
Civil Division at No(s): 173 of 2015 GD

BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY MUNDY, J.:                    **FILED JUNE 21, 2016**

Appellant, Brayman Construction Corporation (Brayman), appeals from the April 9, 2015 order denying its motion to compel arbitration.[1]  After careful review, we reverse and remand.

The trial court summarized the facts and procedural history of this case as follows.

> On February 4, 2015, Gavco Materials Inc. (hereinafter "Gavco") filed a complaint for breach of contract against Brayman alleging failure to furnish

---

[1] An order denying a motion to compel arbitration filed pursuant to Section 7304 of the Pennsylvania Uniform Arbitration Act, 42 Pa.C.S.A. §§ 7301-7362, is immediately appealable as of right.  **See** 42 Pa.C.S.A. § 7320 (providing that an appeal may be taken from an order denying an application to compel arbitration under Section 7304); Pa.R.A.P. 311(a)(8) (stating that an appeal may be taken as of right from an order that is made appealable by statute).

payment for several deliveries of concrete supplied by Gavco. Brayman was the prime contractor on a Pennsylvania Department of Transportation (hereinafter ["]PENNDOT") project involving construction of the Masontown Bridge carrying PA Route 21 over the Monongahela River (hereinafter "the Project") in Fayette County, Pennsylvania.

In November of 2011, Gavco delivered pricing information to Brayman for various mixes of redi-mix concrete that would be needed for the Project, and Brayman used that information when submitting its bid to PENNDOT. Brayman was selected by PENNDOT as the Prime Contractor on the Project, and Brayman ordered concrete for the Project from Gavco beginning in 2012. In January 2012, Gavco and Brayman signed a purchase order, hereafter [sic] "Brayman PO", which included the agreed-upon prices for the material expected to be supplied by Gavco. The parties intentionally omitted the quantity of materials supplied and agreed that the quantity of the materials supplied would be defined on a rolling basis pursuant to each delivery.

Upon delivery of the concrete, a representative of Brayman would sign a Delivery Ticket containing the Terms and Conditions of the sale and providing acknowledgement of the receipt of the concrete. Gavco would then prepare and deliver invoices for each concrete delivery to Brayman, who paid these invoices for a short time. From July 16, 2013 through December 30, 2013, a group of invoices totaling $77,212.82 were not paid by Brayman. When Gavco demanded payment, Brayman communicated that payment was being withheld based on problems Brayman had experienced with concrete installed at "Pier 5" of the Project. Upon Brayman's suspension of payment, Gavco suspended deliveries of the concrete.

On January 9, 2015 Brayman filed a Demand for Arbitration with the American Arbitration Association seeking $3,000,000.00 plus ongoing damages as a result of Gavco's alleged delivery of

non-conforming concrete. Gavco answered Brayman's Demand for Arbitration on February 6, 2015, after filing the underlying complaint with [the trial court] on February 4, 2015. In its complaint Gavco is alleging breach of contract by Brayman, and is requesting relief in the amount [of] $77,212.82 plus twelve percent (12%) per annum and reasonable costs and attorneys' fees incurred by Gavco. Gavco's answer to Brayman's Demand for Arbitration denies the existence of a valid arbitration agreement. On March 4, 2015, Brayman filed a Motion to Compel Arbitration and Stay Judicial Proceedings. Gavco subsequently filed a cross-motion to Stay Arbitration and Compel Judicial Proceedings on March 12, 2015. [The trial court] heard oral arguments in this matter on March 13, 2015 and denied Brayman's motion [on April 9, 2015]. Brayman thereafter filed this timely appeal.[2]

Trial Court Opinion, 6/26/15, at 1-3.

On appeal, Brayman presents the following question for our review.

1. Whether the trial court erred in denying Brayman's motion to compel arbitration and stay the litigation pursuant to the Pennsylvania Arbitration Act, and granting Gavco's motion to stay arbitration because the contract applicable to Gavco's concrete deliveries for the project contains an enforceable arbitration agreement, and Gavco's breach of contract claim fails [sic] within the scope of the arbitration agreement[?]

Brayman's Brief at 5.

Our scope and standard of review are as follows.

---

[2] Brayman and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

> [A]rbitration is a matter of contract and, as such, it is for the court to determine whether an express agreement between the parties to arbitrate exists. Because the construction and interpretation of contracts is a question of law, the trial court's conclusion as to whether the parties have agreed to arbitrate is reviewable by this Court. Our review is plenary, as it is with any review of questions of law.

*Midomo Co., Inc. v. Presbyterian Housing Dev. Co.*, 739 A.2d 180, 187 (Pa. Super. 1999).

> We review a trial court's denial of a motion to compel arbitration for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence. In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. The first determination is whether a valid agreement to arbitrate exists. The second determination is whether the dispute is within the scope of the agreement.

*Burkett v. St. Francis Country House*, 133 A.2d 22, 27 (Pa. Super. 2016) (citation omitted).

Accordingly, we first address whether an agreement to arbitrate exists. *See id.* Brayman contends that a valid purchase order (PO) governs the contractual relationship of the parties, and it contains an arbitration provision. Brayman's Brief at 23-24. In particular, the PO contains a page of terms and conditions, including the following arbitration provision.

> 9. … At Buyer's option, if Buyer so elects in its sole discretion with regard to any particular dispute, any dispute arising in connection with this Purchase Order shall be resolved by arbitration in Butler, PA in accordance with the rules of the American Arbitration Association; and all disputes shall otherwise be

- 4 -

resolved in and only in the Court of Common Pleas of Butler County, PA as the exclusive judicial forum and in accordance with the substantive laws of the Commonwealth of Pennsylvania without giving effect to Pennsylvania's choice of law principles. SUPPLIER WAIVES ITS RIGHT TO A JURY TRIAL REGARDING ANY DISPUTE OF THIS PURCHASE ORDER.

Brayman PO, 12/5/11, at Terms and Conditions, ¶ 9 (capitalization in original). Brayman argues that the trial court erred in denying its motion to compel arbitration based on the trial court's finding that the purchase order was not a valid and enforceable contract and did not control the parties' relationship. *Id.* at 21, 24-25.

The Pennsylvania Uniform Commercial Code, Article 2, Sales, 13 Pa.C.S.A. §§ 2101-2725 (UCC), applies in this case because the purchase order involved sales of concrete, which are transactions in goods.[3] 13 Pa.C.S.A. § 2102. Section 2204 of the UCC provides that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." *Id.* § 2204(a).

Under Section 2204(a), the PO is a valid written contract because the parties agreed to the essential terms for the sale of concrete. The PO is dated December 5, 2011 and numbered 11-0005-18. Brayman PO, 12/5/11, at 1. It contains the agreed upon pricing and delivery fees for a

---

[3] The parties agree that the UCC applies in this case. Gavco's Brief at 13; Trial Court Opinion, 6/26/15, at 4.

list of materials. *Id.* It further provides that the prices are valid through June 1, 2014, that the material will meet PennDOT specifications, and that payment is due within 30 days from the date of the invoice. *Id.* Gavco, through its representative, signed and dated a signature line indicating that it accepted the purchase order. *Id.* Brayman's representative also signed it. *Id.* Further, the PO is valid because after Gavco and Brayman signed it, the parties performed over 100 sales according to its terms, which evidences their recognition of the contract. 13 Pa.C.S.A. § 2204(a).

The PO, however, does not specify the quantity of the materials that Brayman was ordering; instead, it lists the quantity as "TBD." *Id.* On this basis, the trial court concluded that "[b]ecause the quantity term was omitted from the Brayman PO, and only included after communication between agents of each party, the Brayman PO is illusory as it does not obligate Brayman to procure materials from Gavco." Trial Court Opinion, 6/26/15, at 7. Gavco agrees with the trial court that the failure to specify the quantity renders the agreement illusory. Gavco's Brief at 23-26. Brayman asserts that the contract is valid because a contract may leave some terms open under the UCC. Brayman's Brief at 22.

Section 2306 of the UCC permits "requirements contracts" that contain "[a] term which measures the quantity by the output of the seller or the requirements of the buyer[.]" 13 Pa.C.S.A. 2306(a). Moreover, Section 2204 of the UCC provides "[e]ven though one or more terms are left open[,]

a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." 13 Pa.C.S.A. 2204(c). Here, the parties' intent to enter into a contract is clear from their performance pursuant to the PO by ordering and delivering concrete, and the "TBD" quantity of concrete was determined by Brayman's requirements. Accordingly, the PO is a valid requirements contract under the UCC and it not illusory for failure to specify the precise quantity of concrete to be supplied.

The trial court also concluded that the contract was illusory because it contained a clause permitting Brayman to terminate the PO at any time, so "it does not obligate Brayman to procure materials from Gavco." Trial Court Opinion, 6/26/15, at 7. Paragraph 12 of the PO provides that "[b]uyer [Brayman] in its sole discretion and without cause, may terminate this Purchase Order, in whole or in part, at any time[.]" Brayman PO, 12/5/11, at Terms and Conditions, ¶ 12. Under Section 2309 of the UCC, "[t]ermination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party." 13 Pa.C.S.A. § 2309. Accordingly, Section 2309 of the UCC permits one party to unilaterally terminate a contract, but requires the party provide reasonable notice of termination. **Id.** Based on this provision allowing for unilateral termination, and the fact that Brayman never attempted to actually terminate the PO and so was not required to provide any notice of

termination, the PO is not illusory due to the clause in paragraph 12 of the PO permitting unilateral termination. **_See id._**

The trial court also concluded that "Gavco's self-inclusive Terms and Conditions on the Delivery Ticket are indicia that Gavco desired to be bound by those terms, and those terms were assented to by Brayman upon signing the Delivery Ticket." Trial Court Opinion, 6/26/15, at 7. However, the PO provides that it is the "entire contract" between the parties, as follows.

> 1. The following terms and conditions, together with the terms set forth in the purchase order form incorporates by reference any plans, specifications, Prime Contract between Owner and General Contractor, contracts and subcontracts ("Contract Documents") to the extent that those Contract Documents involve, relate to, or are affected by any and all goods, materials, products, software and/or services ("Supplies") being supplied under this Purchase Order or other documents as are incorporated by reference, as amended in any subsequent authorized writing from Buyer, shall constitute the entire contract ("Purchase Order") between Brayman [] ("Buyer") and Supplier, Supplier shall assume as to Buyer all obligations of Buyer to Owner, and/or higher tier contractors under the Contract Documents. If this Purchase Order is construed as an offer, this offer expressly limits acceptance to the terms of this offer and notice of objection to any different, additional or prior terms is hereby given. If this Purchase Order is construed as an acceptance of an offer, this acceptance is expressly conditioned upon the offeror's assent to any different or additional terms contained or referenced in this Purchase Order. If this Purchase Order is construed as a confirmation of an existing contract, the parties agree that this confirmation states the exclusive terms of any contract between the parties. This Purchase Order shall be deemed to have been accepted by the Supplier upon receipt by

the Buyer of any writing, including a writing transmitted by fax or other means of electronic transmission, indicating acceptance or by the commencement of performance or shipment of any Supplies or any portion thereof.

Brayman PO, 12/5/11, at Terms and Conditions, ¶ 1. Based on this provision, and the parties' performance under the PO of ordering and delivering concrete, the PO is the entire agreement between the parties and their agreement does not include any subsequent, additional terms in the delivery slips.

Thus, the PO is not illusory and it governs the parties' relationship. Because the PO is valid and enforceable, the arbitration clause contained therein is a valid agreement to arbitrate. *See Midomo*, *supra*.

We next address whether the parties' dispute is within the scope of the arbitration clause. The arbitration clause provides that "any dispute arising in connection with this Purchase Order shall be resolved by arbitration[.]" Brayman PO, 12/5/11, at Terms and Conditions, ¶ 9. Gavco's complaint, sounding in breach of contract, indicates that it is seeking payment for a group of invoices totaling $77,212.82. Gavco's Complaint, 2/4/15, at 2. Gavco also noted that Brayman was withholding payment based on alleged problems Brayman experienced with some of the concrete. *Id.* Those disputes arise in connection with the PO because the parties agreed that Gavco would supply material meeting PennDOT standards, and Brayman

would submit payment for that concrete within 30 days of delivery. Brayman PO, 12/5/11, at 1. Therefore, the PO's arbitration clause applies.

For the foregoing reasons, we conclude that the trial court erred by denying Brayman's motion to compel arbitration based on its finding that the PO was illusory. Accordingly, we reverse the trial court's April 9, 2015 order and remand for further proceedings consistent with this memorandum.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/21/2016