J-A23023-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAVID L. FITZGERALD, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK COMYNS AND THE WHARTON | : | No. 3859 EDA 2016 |
| ADVISORY GROUP, LLC | : | |

Appeal from the Order Entered November 15, 2016
In the Court of Common Pleas of Delaware County
Civil Division at No(s):  No. 2015-006627

BEFORE:   PANELLA, J., DUBOW, J., and FITZGERALD, J.*

MEMORANDUM BY DUBOW, J.:                **FILED DECEMBER 29, 2017**

Appellant, David L. Fitzgerald, appeals from the November 15, 2015

Order, entered in the Delaware County Court of Common Pleas, sustaining the

Preliminary Objections that Appellees, Mark Comyns ("Comyns") and the

Wharton Advisory Group, LLC ("Wharton") filed, and dismissing Appellant's

Complaint.  After careful review, we reverse.

In 2000, Appellant and Comyns formed Wharton, a Pennsylvania limited

liability company and investment advisory firm.[1]  Wharton is a Registered

Investment Advisor ("RIA") whose activities are regulated by the Securities

---

[1] Appellant and Comyns co-founded Wharton with a third person, Daniel P. Quinn, each of whom had a one-third ownership interest in Wharton at the time of founding.  In 2002, Quinn terminated his involvement in Wharton and transferred his one-third ownership interest to Appellant and Comyns in equal shares.  Currently, Appellant and Comyns each own a one-half interest in Wharton.

---

\*   Former Justice specially assigned to the Superior Court.

and Exchange Commission and the Commonwealth of Pennsylvania Department of Securities (collectively referred to as "SEC"). Because Wharton is a RIA, Wharton is permitted only to provide fee-based, and not-commission based, advisory services to its clients.

In August 2010, Wharton, Comyns and Fitzgerald entered into three agreements so that clients of Wharton would have access to commission-based advisory services. The three agreements make clear distinctions between the parties' rights and obligations when providing fee-based advisory services provided through Wharton and commission-based services provided through a separate entity—LPL Financial.

**Master Services Agreement Between Wharton and LPL Financial**

On August 10, 2010, Wharton entered into a Master Services Agreement ("MSA") with LPL Financial, which is a member of FINRA ("Financial Industry Regulatory Authority") and, thus, is regulated by FINRA. As a result, LPL Financial is authorized to provide commission-based advisory services to its clients, a service Wharton is not authorized to provide.

In the MSA, Wharton and LPL Financial clarify that they are separate entities, not affiliated with each other, and neither party has the authority to bind the other party. MSA, 8/10/10, at § 1(B), § 4(B), § 12(D)

LPL Financial agreed to provide numerous services to clients of Wharton, such as custodial services, account statements and reports, execute orders, access to LPL Financial's technology, and research support. *Id.* at §§ 2(A)-(G). The MSA, however, differentiates between customers for which LPL

Financial provides commission-based advisory services and those for which Wharton provides fee-based advisory services. *Id.* at §§ 3(A), (B).

The MSA further acknowledged the individuals, including Appellant and Comyns, who provide commission-based advisory services to clients (known as "Investment Advisor Representatives") and provide commission-based advisory services (known as "LPL Registered Representatives"). Pursuant to the terms of the MSA, when those individuals provide fee-based advisory services for clients they act through Wharton, and when they provid commission-based services, they act through LPL Financial. *Id.* at §§ 3(A)(2). 3(B). The parties further acknowledged that if an individual who is associated with Wharton (known as "Associated Persons") provides commission-based advisory services, FINRA regulates those individuals. *Id.* at § 4(O)(7).

**Branch Office Manager Agreement Between Fitzgerald and LPL Financial**

As part of the arrangement to provide Wharton customers with commission-based advisory services, on August 19, 2010, Fitzgerald and LPL Financial entered into a Branch Office Manager Agreement. This agreement provided that LPL Financial appointed Fitzgerald to be the Branch Office Manager for LPL Financial. Branch Office Manager Agreement, 8/19/10, at § 1(a). The agreement required Fitzgerald to set up a branch office for LPL Financial, called an Office of Supervisory Jurisdiction, as required by FINRA. Fitzgerald agreed to supervise representatives selling commission-based

advisory services and conduct its business in accordance with various regulatory bodies, including FINRA. *Id.* at § 2(b).

### Hybrid Representative Agreement Between Comyns and LPL Financial

The final agreement the parties entered into in August 2010 was between Comyns and LPL Financial. In that agreement, LPL Financial designated Comyns to be a Registered Representative of LPL Financial, and authorized Comyns to sell LPL Financial commission-based advisory services. Hybrid Representation Agreement, 8/10/10, at § 1(B). The agreement further recognized that Comyns had a hybrid role: he would sell commission-based advisory services through LPL Financial and fee-based advisory services though Wharton. *Id.* at Preamble.

In sum, these agreements demonstrate a clear delineation between the fee-based advisory services provided through Wharton and the commission-based advisory services provided through LPL Financial.

On July 28, 2016, Appellant filed a one-count Complaint seeking Wharton's dissolution in accordance with 15 Pa.C.S. § 8971, *et seq*.[2] In his Complaint, Appellant alleged that since the parties did not have an operating agreement governing Wharton's dissolution, Appellant requested that the court exercise its statutory and equitable authority to dissolve the company.

---

[2] Effective February 21, 2017, the legislature replaced 15 Pa.C.S. § 8971, *et seq.* with 15 Pa.C.S. § 8871, *et seq*. The cause of action herein arose prior to the repeal of Section 8971, and, to the extent there are any differences between the prior and current versions of this statute, they are immaterial to our disposition.

Complaint, 7/28/15 at ¶ 17, 45. Similarly, the parties did not have agreement compelling arbitration to resolve their disputes.

On August 24, 2015, Comyns filed Preliminary Objections, arguing that the parties were required to arbitrate any dispute between them before a FINRA arbitration panel. Specifically, Comyns alleged that because Appellant and Comyns are FINRA-registered advisors, and LPL Financial is a FINRA member, only FINRA has jurisdiction to resolve the disputes regarding Wharton's business activities. Preliminary Objections, 8/24/15, at ¶¶ 3-5.[3]

On November 15, 2016, the trial court sustained Comyns' Preliminary Objections and dismissed Appellant's Complaint finding that the dissolution of Wharton is within the jurisdiction of FINRA, even though the SEC, and not FINRA, regulates Wharton's business activities. This appeal followed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following two issues on appeal:

1. Whether the trial court committed an error of law when it sustained Preliminary Objections and dismissed the Complaint when it found that there was an applicable agreement to arbitrate before the Financial Industry Regulatory Authority and that agreement required the arbitration of a claim for dissolution of Wharton Advisory Group, LLC, an SEC-regulated Pennsylvania Limited Liability Company?

2. After reviewing the whole record, did the trial court err when it made improper findings that were both legal and factual?

_____

[3] On February 4, 2016, the court entered an Order approving the parties' Stipulation to dismiss Wharton as a defendant.

Appellant's Brief at 3.

Our standard of review in determining whether a trial court erred in ruling on preliminary objections is well established:

> [O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief.

*O'Donnell v. Hovnanian Enters., Inc.*, 29 A.3d 1183, 1186 (Pa. Super. 2011) (citations, quotation marks, and paragraph breaks omitted); *see also Midomo Co., Inc. v Presbyterian Hous. Dev. Co.*, 739 A.2d 180, 186 (Pa. Super. 1999) (stating that where preliminary objections are lodged claiming the existence of a previous agreement to arbitrate, an appellate court's review "is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition.").

### No Agreement to Arbitrate the Dissolution of Wharton

Generally, in order to assess whether an enforceable agreement to arbitrate exists, a court must determine whether the parties entered into a valid agreement to arbitration and, if so, whether the dispute between the parties falls within the scope of the agreement. *Messa v. State Farm Ins.*

***Co.***, 641 A.2d 1167, 1168 (Pa. Super. 1994). The merits of the underlying controversy are irrelevant when deciding an application to proceed with arbitration. ***See*** 42 Pa.C.S. §7304(e). However, in the instant matter, the parties do not dispute that they do not have an agreement to arbitrate Wharton's dissolution. Rather, Comyns argues that FINRA arbitration is appropriate because Wharton's dissolution concerns FINRA-regulated business activities.

### FINRA Does Not Require Arbitration of the Dissolution of Wharton, An Entity that FINRA does not Regulate.

FINRA's Code of Arbitration Procedure ("Code") provides that "[e]xcept as otherwise provided in the Code, a dispute must be arbitrated under the Code if the **dispute arises out of the business activities of a member or an associated person** and is between or among" members, members and associated persons, or associated persons. Code § 13200 (emphasis added).

In dismissing the Complaint and ordering this matter to FINRA arbitration, the trial court focused not on Wharton itself, but rather on whether Wharton's members engage in FINRA-regulated business. Trial Ct. Op, 4/6/17, at 14. Thus, the court concluded that, "[t]his matter involving the financial services industry is ripe for arbitration by the self-regulatory organization specifically established to manage this profession and to exercise comprehensive oversight over all securities firms that do business with the public." ***Id.***

Our review of the record indicates that, contrary to the trial court's conclusion, this dispute arises solely out of the business activities of Wharton, which FINRA does not regulate. Therefore, Wharton, itself, is not a "member or an associated person" of FINRA.

The fact that the Wharton's members engage in FINRA-related activities through another entity is irrelevant to this analysis. Appellant's and Comyns' role as members of the LLC is to manage and hold an ownership interest in Wharton. When Appellant and Comyns engage in FINRA-related activities, they do so through an entity other than Wharton. Thus, the trial court erred in imputing onto Wharton attributes of its owners who do not engage in FINRA-regulated activities through Wharton.

Similarly, the business activities of LPL Financial are equally irrelevant when analyzing whether the parties must arbitrate the dissolution of Wharton through FINRA. The three agreements discussed above clearly delineate that when the parties engaged in FINRA-regulated activities, they did so through LPL Financial and not through Wharton. The agreements specifically distinguish between the parties' rights and obligations when engaged in FINRA-regulated activities and SEC-regulated activities. Thus, the trial court also erred when it imputed the business activities of LPL Financial onto Wharton.

Since the trial court erred in not respecting the corporate structure of Wharton and imputing onto Wharton business activities of Wharton's LLC

members as well as FINRA-regulated activities engaged in by an entity separate and distinct from Wharton, the trial court erred in sustaining the Appellant's Preliminary Objections and finding that FINRA has jurisdiction over the dissolution of Wharton.

Order reversed. Complaint reinstated. Jurisdiction relinquished.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 12/29/2017*