**CLARK MOTOR COMPANY, INC.; Robert W. Clark; David Clark, Appellants**

v.

**MANUFACTURERS AND TRADERS TRUST CO. d/b/a M & T Bank.**

No. 08–4831.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Dec. 15, 2009.

Filed: Jan. 7, 2010.

Alan L. Frank, Esq., Alan L. Frank Law Associates, Elkins Park, PA, for Appellants.

Lawrence J. Gebhardt, Esq., Ramsay M. Whitworth, Esq., Gebhardt & Smith, Baltimore, MD, for Manufacturers and Traders Trust Co. d/b/a M & T Bank.

Before: FISHER, HARDIMAN and VAN ANTWERPEN, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

Clark Motor Company, Inc. ("Clark Motor") and its officers, Robert and David Clark, appeal from an order of the District Court granting summary judgment to Manufacturers and Traders Trust Company ("M & T"). *See Clark Motor Co., Inc. v. Manufacturers and Traders Trust, Co.,* No. 4:07–CV–856 (M.D.Pa. Nov. 20, 2008). Clark Motor filed suit claiming damages for breach of contract, negligent misrepresentation, negligence, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty. We will affirm.

## I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

In June 2003, Clark Motor entered into an agreement with M & T for a floor plan line of credit. Under the agreement, M & T provided financing for Clark Motor's purchase of new, used, and program vehicles. When Clark Motor purchased a vehicle, it would enter information, including the vehicle identification number ("VIN") and the vehicle's purchase price, into M & T's Dealer Access System ("DAS"). M & T would then deposit funds for the purchase of the vehicle into Clark Motor's checking account to allow for the purchase of the vehicle. After the vehicle was sold to a customer, Clark Motor would repay M & T with interest.

Clark Motor was owned by brothers Robert and David Clark. Robert Clark was the President and majority owner of Clark Motor, while David Clark was its minority owner and Vice–President. In July 2001, Clark Motor hired Sally Smith ("Smith") to serve as office manager. Smith had been previously employed by Mifflin County Coalition to Prevent Teen Pregnancy ("Coalition") and Lazer Pro Digital Media Group ("Lazer Pro"). (Appellant Br. at 7.) On January 8, 1999, Smith pleaded guilty to charges of fraudulently endorsing checks payable to the Coalition. Later, on May 14, 2001, Smith pleaded guilty to 22 counts of forgery, theft, and receiving stolen property relating to actions she took at Lazer Pro. (J.A. A237–240.)

No one at Clark Motor was aware of Smith's criminal record when she was hired. Robert Clark became aware of Smith's criminal past, at the latest, on February 10, 2003, when a restitution order was served on Clark Motor requiring it to deduct money from Smith's salary.

Notwithstanding Smith's history, Clark Motor gave Smith the pin number to the DAS after it entered into its agreement with M & T. Smith was therefore able to enter new and used cars into the system and cause funds to be transferred from the line of credit to Clark Motor's checking account.

All parties agree that Smith acted fraudulently in her use of the DAS. Beginning in 2005, using information from a separate Chrysler Dealer Information System, Smith entered new vehicles into the DAS which were owned by other dealers. Smith also overvalued used cars, inflating the amount Clark Motor paid for those

vehicles. All told, Smith entered over 35 new vehicles into the DAS that were never owned by Clark Motor. This fraud caused M & T to loan Clark Motor some $1.5 million more than it otherwise would have in order to fund Clark's purchases.

The parties agree that Smith used roughly $100,000 of the fraudulently loaned money herself. While M & T asserts in its brief that the most likely scenarios are that the remaining $1.4 million was either taken by Robert and/or David Clark or used to cover Clark Motor's operating losses, there is little by way of evidence in the record to show what happened to the remaining funds.

The agreement authorized M & T to audit Clark Motor's inventory. M & T did carry out audits of Clark Motor's inventory, but Clark Motor argues on appeal that these audits should have been more detailed. When performing an audit, M & T would check each vehicle entered into the DAS against the vehicles on the lot. When vehicles were missing from the lot, auditors would seek an explanation from Smith. There were several legitimate reasons why a vehicle might appear on the list for financing but not be physically present on Clark Motor's lot at the time of the audit. Some vehicles were loaned by Robert Clark to his family and to other individuals. Other vehicles had been ordered from other dealers but had not yet arrived or had been taken by customers before Clark Motor remitted payment to M & T.

On December 19, 2006, M & T and Clark Motor executed a new agreement for financing with a substantially increased line of credit. Smith's fraud was subsequently uncovered in January 2007.

## II.

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1332. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. We review a District Court's order granting summary judgment *de novo* applying the same standard as the District Court. *Alcoa, Inc. v. United States,* 509 F.3d 173, 175 (3d Cir.2007). Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Saldana v. Kmart Corp.,* 260 F.3d 228, 232 (3d Cir. 2001).

We exercise plenary review over the District Court's interpretation of state law. *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.,* 89 F.3d 976, 983 (3d Cir.1996).

## III.

The District Court entered summary judgment for M & T. On appeal, Clark Motor claims that there were genuine issues of material fact with regards to several of its claims. Before the District Court, Clark Motor raised five claims, two of which, the breach of contract and negligent misrepresentation claims, are at issue in this appeal. We will consider each of the plaintiffs' claims in turn.

## A.

A plaintiff alleging breach of contract under Pennsylvania law must prove the existence of a contract between the parties, a breach of a duty imposed by the contract, and resulting damages. *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 225 (3d Cir.2003); *see also CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa.Super.Ct.1999). There is no dispute that the parties had a contract, so we will consider whether the contract was breached.

Clark Motor claims that M & T breached the contract by funding its loan requests without proper documentation, failing to properly conduct required audits, breaching the duty of good faith and fair

dealing, and providing loans in excess of the maximum amount set by the agreement.

■ We first consider whether the use of the DAS complied with the agreement's documentation requirements. The Pennsylvania Supreme Court has stated that course of performance can be "perhaps the strongest indication of what the writing means." *Atlantic Richfield Co. v. Razumic,* 480 Pa. 366, 390 A.2d 736, 741 (1978). In this case, the District Court found that "the parties employed the DAS both before and after the 2004 and 2006 agreements governed their relationship. Therefore, the course of dealing and course of performance indicate that both parties agreed the submission of the required information via the DAS would satisfy the agreements." (J.A. A33.)

There is strong evidence in the record that suggests that Clark Motor not only consented to the use of the DAS, but did so enthusiastically. The agreement allowed loan money to be advanced to Clark Motor at the request of any person authorized by the President, Vice President, or Treasurer of Clark Motor. Because Smith was provided with a PIN by Clark Motor to use the DAS, her use of the system was authorized by the agreement.

Clark Motor benefited from the use of the DAS to promptly receive financing for its vehicle inventory. According to Clark Motor's Sales Manager, Jeff Hollingshead, the loss of the ability to receive prompt financing using the DAS, after Smith's fraud was uncovered, contributed to Clark Motor's failure as a business. (J.A. A551–52.)

Plainly the use of the DAS was considered by both parties to be an efficient and convenient way of doing business to which both parties acquiesced over a period of three years. Clark Motor cannot now decide that the conduct in which it voluntarily participated constituted a breach on the part of M & T. *Cf. Agathos v. Starlite Motel,* 977 F.2d 1500, 1509 (3d Cir.1992) ("[A] course of performance by one party accepted or acquiesced in without objection by the other may be evidence of an agreed modification or waiver of a written term.").

We find that based on the course of performance it is clear both parties agreed that the information logged into the DAS satisfied the requirements of the agreement.

■ We also concur with M & T that even if the DAS did not satisfy the documentation requirement, there was, nonetheless, no breach of contract. The documentation was a condition precedent to M & T's obligation to loan money. *See Am. Leasing v. Morrison Co.,* 308 Pa.Super. 318, 454 A.2d 555, 559 (1982) (citing *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.,* 619 F.2d 1001, 1016 (3d Cir.1980)). Without the required paper work, M & T was under no obligation to loan money to Clark Motor. *See Keystone Tech. Group, Inc. v. Kerr Group, Inc.,* 824 A.2d 1223, 1227–28 (Pa.Super.Ct.2003) (citing *Acme Mkts., Inc. v. Fed. Armored Express, Inc.,* 437 Pa.Super. 41, 648 A.2d 1218, 1220 (1994)). M & T, in its discretion, could waive the paperwork requirement and loan money without it. *See Prime Medica Assocs. v. Valley Forge Ins. Co.,* 970 A.2d 1149, 1156–57 (Pa.Super.Ct.2009).

The condition precedent only existed to protect M & T from fraud. The requirement that paperwork be sent to M & T cannot possibly be interpreted as a provision designed to protect both parties because there is no way in which sending paper work to M & T would protect Clark Motor against fraud perpetrated *by* M & T. Clark Motor could have employed internal procedures to protect itself against employees like Smith who would steal from the company. M & T's decision to waive a

condition precedent to loaning money cannot constitute a breach.

### B.

Clark Motor asserts that M & T breached its contract by failing to thoroughly audit Clark Motor's inventory. M & T relied on explanations provided by Clark Motor employees as to why vehicles on the Floor Plan were not physically present on Clark Motor's lot. In Clark Motor's view, M & T should not have accepted these explanations and should have undertaken a more thorough audit.

■ The District Court found no duty imposed by any of the agreements between the parties for M & T to audit Clark Motor's inventory and we likewise find no such duty existed. While the financing agreements between the parties gave M & T the right to conduct an audit, the agreements did not require the audits. M & T had the right to audit but not the duty to do so. *See Morena v. South Hills Health Sys.*, 501 Pa. 634, 462 A.2d 680, 684 (1983). Because there was no duty to perform the audits in the first place, we concur with the District Court that there is no reason to examine whether M & T was negligent in performing the audits.

### C.

Clark Motor next argues that M & T breached the agreement by providing financing for used vehicles in excess of their NADA values.

The 2003 and 2004 Agreements state that financing for used vehicles was subject to restrictions set by M & T. Among these restrictions was "the percentage of NADA value...." 2003 Floor Plan Agreement, ¶ 4.2.2 (J.A. A251); 2004 Floor Plan Agreement ¶ 4.2.2 (J.A. A265.) A precise percentage, however, was not defined. With regard to used cars, the 2006 Agreement provided that M & T would loan the lesser of "(I) the Borrower's acquisition price" or "(II) one hundred percent (100%) of the current NADA wholesale/trade value for such Used Motor Vehicle." 2006 Loan Agreement ¶ 1.3(b) (J.A. A278.)

■ We agree with the District Court that M & T could not have breached on these terms. Because there was no percentage given in the 2003 or 2004 agreements, M & T could not have breached by financing more than 100 percent of the NADA value. Instead, the NADA value was only one factor in determining whether M & T would finance the vehicles. Even after the 2006 Agreement was signed and the 100 percent cap was in place, M & T did not breach because the record shows that Clark Motor requested the increased financing. The District Court cited a number of Pennsylvania cases, including *Byrne v. Kanig*, 231 Pa.Super. 531, 332 A.2d 472, 475 (1974), which make clear one party to a contract may not request that the other party breach an agreement and then claim a breach of contract on the breach he himself requested.

Additionally, the cap on the amount of a vehicle's value that M & T would finance was in place solely for the protection of M & T. If M & T were to loan more than a vehicle was worth, then it would find itself unsecured for the difference between the amount it loaned and the vehicle's actual value. M & T relied on this contract provision to protect itself from being placed in an unsecured position. Clark Motor, on the other hand, did not need to rely on this provision because it was the party purchasing the vehicle. If a vehicle was priced higher than Clark Motor could sell it, then Clark Motor could refuse to make the purchase. It needed no protection from the financing agreement.

M & T's willingness to waive the provision to aid Clark Motor does not constitute a breach of contract. *Formigli Corp. v. Fox*, 348 F.Supp. 629, 646 (E.D.Pa.1972)

(citing *Mayer Bros. Constr. Co. v. Am. Sterilizer Co.*, 258 Pa. 217, 101 A. 1002 (1917); *McKenna v. Vernon*, 258 Pa. 18, 101 A. 919 (1917)). For these two reasons, M & T did not breach the contract by loaning amounts in excess of the NADA value for used cars.

■ M & T also did not breach the agreements by temporarily increasing Clark Motor's credit limit. The 2004 Agreement states that "[M & T] may, at the request of the Borrower and in [M & T]'s sole discretion, make Loans to the Borrower ... in excess of the Approved Principal Amount." (J.A. A264 ¶ 2.2.) The District Court concluded that this provision allowed M & T to make a loan in excess of the credit limit if such a loan was requested by Clark Motor. The District Court declined to read into the provision a requirement that M & T "provide Clark Motor written notification of something it recently requested and of which it was already aware." (J.A. A41.) Additionally, because M & T sent Clark Motor both daily floor plan activity reports and summaries each month showing how much credit was available, Clark Motor cannot claim it was unaware that its loan requests were in excess of its credit limit under the agreement. We thus find M & T did not breach the agreement by failing to provided written notification that it was providing financing in excess of Clark Motor's credit limit.

### D.

There is a second basis for affirming the District Court's grant of summary judgment on the breach of contract counts.[1] In a breach of contract case, damages are a necessary element of the claim. *Ware*, 322 F.3d at 225. In this case, M & T actually paid Clark Motor all of the money that Clark is now claiming as damages. Clark Motor had control over the funds from the date they were requested in the DAS to the present. Even if M & T breached the contract by loaning money to Clark Motor, Clark Motor could have avoided all damages by simply repaying the amount loaned in breach of the contract.

### E.

■ We quickly dispose of Clark Motor's claim that M & T violated the implied duty of good faith and fair dealing in the contract. As the District Court put it, Clark Motor is "essentially arguing that M & T breached the implied covenant of good faith and fair dealing by acquiescing to Clark Motor's request for additional funding." (J.A. A44.) Clark Motor could have put additional procedures in place to ensure that its employees did not request financing either above the existing credit limit or for vehicles Clark Motor did not purchase. Clark Motor requested financing that went beyond M & T's duty to perform under the contract, and in fact M & T performed beyond what the contract required.

In Pennsylvania, implied covenants do not impose an obligation to perform beyond what a contract requires. *Cable & Assocs. Ins. Agency v. Commercial Nat'l Bank of Pa.*, 875 A.2d 361, 364 (Pa.Super.Ct.2005). Because M & T breached no contractual duty, it likewise did not violate the duty of good faith and fair dealing.

### F.

Clark Motor's negligent misrepresentation claim alleges that M & T provided false information in its audit summaries

---

1. Although the District Court did not reach this issue, we may affirm the District Court on any grounds supported by the record. *See* *Rodriguez v. Our Lady of Lourdes Med. Ctr.*, 552 F.3d 297, 303 (3d Cir.2008).

and failed to exercise reasonable care in conducting and communicating the audit results to Clark Motor.

The District Court held that the gist of the action doctrine barred Clark Motor's negligent misrepresentation claim. The gist of the action doctrine exists "to maintain the conceptual distinction between breach of contract claims and tort claims." *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa.Super.Ct.2002). Under the gist of the action doctrine, a plaintiff may not through artful pleading attempt to frame a breach of contract claim as a tort claim. The differences between tort and contract claims in Pennsylvania have been described as follows: "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." *Bash v. Bell Tele. Co.*, 411 Pa.Super. 347, 601 A.2d 825, 829 (1992).[2]

On appeal Clark Motor argues that the negligent misrepresentation claim should have been permitted in light of the District Court's ruling on the breach of contract claim. Because the District Court found that there was no duty to audit imposed by the contract, Clark Motor contends that the gist of the action doctrine should not be a barrier to proceeding with a tort action.

The social duty needed to maintain a tort claim arises, according to Clark Motor, from Section 552 of the Restatement (Second) of Torts, which provides in part:

> One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pe-

cuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552. According to Clark Motor, because M & T had the right to audit the vehicle inventory and provided the results of these audits to Clark Motor in the course of its business and in its pecuniary interest, the duty to exercise reasonable care and competence arose from the Restatement provision rather than the contract itself.

■ Clark Motor's argument fails for two reasons. First, applying the gist of the action doctrine, M & T's right to conduct audits of Clark Motor's vehicle inventory arose only because of the contract between the parties. Any obligation on M & T's part to ensure the accuracy of the information arose from the implied duty of good faith between parties to a contract, not the Restatement of Torts.

■ Next, we find, as the District Court suggested in a footnote, that Clark Motor is the source of the false information. (J.A. A48, n. 7.) When M & T found vehicles missing from Clark Motor's inventory, they sought an explanation from Clark Motor employees. M & T accepted the explanations and then provided a courtesy copy of the audit to Clark Motor. The Restatement provides liability against one who "supplies false information for the guidance of others." Restatement (Second) of Torts § 552(1). In this case, the false information was supplied by Clark

---

**2.** While the Pennsylvania Supreme Court has never adopted the gist of the action doctrine, the Pennsylvania Superior Court has applied the doctrine. *Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 577 (Pa.Super.Ct.2003); *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa.Super.Ct.2002). This Court previously applied the gist of the action doctrine applying Pennsylvania law in *Bohler–Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 103–04 (3d Cir.2001).

Motor when it provided M & T with inaccurate explanations regarding the missing vehicles. There is no evidence to suggest that M & T believed Clark Motor provided it with false information in the audit, and, therefore, nothing to suggest that M & T believed it was repeating false information when it provided courtesy copies of the audits to Clark Motor. It is also difficult to construe the audit forms M & T gave Clark Motor as providing guidance, when they merely restated the (false) information that Clark Motor already had its disposal. In sum, we share the District Court's skepticism of a claim where "a party ... wishes to be compensated for deceiving itself." (J.A. A48, n. 7.) M & T was therefore entitled to summary judgment on the negligent misrepresentation claim.

## IV.

For the foregoing reasons, we will affirm the order of the District Court.